Jefferson Louk, Appellant, *v.* Ira Woods, Appellee.

APPEAL FROM McDONOUGH.

A party has a right, in an action of trespass *quare clausum fregit,* to introduce
such evidence of title as he possesses, so as to obtain a decision upon the
proper construction of a deed under which he claims right by license from
the grantees, to enter upon the land and do the acts complained of.

A deed which reserves a strip of land seven and forty-seven hundredths
rods wide east and west, and extending in length across the quarter section
north and south, will not be construed, against the manifest intention of the
party expressed in the deed, as reserving only seven and forty-seven hun-
dredths rods of land.

Where a number of persons are intrusted with powers in matters of public
concern, and all of them are regularly assembled and consulting, the majority
may act and determine, if their authority is not otherwise limited and re-
stricted.

In such case where a report is only signed by two of three viewers of a road, it
will be presumed that the third was present and consulting, until the contrary
is shown.

An inquiry into the acts and proceedings of a county commissioners' court by
their minutes, files, and other proofs, so far as to ascertain whether a road has
been legally laid and established under the laws, is proper.

So a petition in which a certain road is described over a certain *locus in quo,*

Louk *v.* Woods.

may be admitted in proof as an admission of a fact therein stated. And parol proof of the actual location of a road, is also competent evidence to establish the existence of a highway, if travelled, recognized, and worked upon as such, in order to raise a presumption of dedication.

THIS is an action of trespass *quare clausum fregit*, originally commenced in the county of Fulton, and taken by change of venue to McDonough.

The declaration contains three counts, —

1st. For that defendant, on the 22d of March, 1850, at the county of Fulton, broke and entered the plaintiff's close, described as " a strip of land $7\frac{47}{100}$ rods wide off the east side of the south half of the north-west quarter of sec. 19, 8 N. 1 E.," and threw down his fence.

2d count like the first in all respects, except the land is described as being a strip $7\frac{47}{100}$ rods wide off the east end of the north-west quarter of sec. 19.

3d count same as first count, except the land is described as being the south half of the north-west quarter of sec. 19, 8 N. 1 E.

The defendant filed five pleas to the declaration as follows : —

1st plea to 1st count. *Liberum tenementum*, alleging the freehold to be in Orlando H. Woods and others, heirs at law of Jonas Woods, deceased, and that defendant entered by their leave.

2d plea to 2d count the same, alleging the freehold to be in John Woods, and the said Orlando H. Woods, heirs, &c.

3d plea to 3d count the same, alleging the freehold to be in Orlando H. Woods, and the other heirs at law of Jonas Woods, deceased, and entry by their leave.

4th plea to the whole declaration. That there was a public road laid out over the land where the trespass was committed, that the road was obstructed and defendant removed the obstruction, as he had a right to do.

5th plea to the whole declaration. That defendant was supervisor of roads for that district where the closes were situated ; that there was a public road laid out over the closes where, &c.; that it was his duty to keep the road open and in repair; and as such supervisor he did, in discharge of his duty, remove the plaintiff's fence which was obstructing the road, and is the trespass complained of.

Replications to 1st plea, that the close, &c. is not the freehold of the said Orlando H. Woods and others.

To 2d and 3d pleas, the same.

To 4th and 5th pleas, that there is no such road.

Issues to the country were joined on all these pleas.

22 *

The defendant, in order to show title in Orlando H. Woods and others, introduced a deed from Ira Woods to Jonas Woods, in due form, dated 17th of January, 1839, conveying to said Jonas, "the south half of the north-west quarter of section 19, 8 N. 1 E., excepting 7½ rods off of the east end of section 19." The plaintiff objected to the introduction of this deed, but the court admitted it and plaintiff excepted.

The plaintiff then entered a *nolle prosequi* to the 1st and 3d counts in his declaration.

The defendant next offered in evidence a deed from Ira Woods to John Woods, one of the persons named in defendant's 2d plea, dated 17th of January, 1839, and duly executed, conveying to said John " the north half of the north-west quarter of section 19, 8 N. 1 E. excepting 7 rods and $\frac{47}{100}$ of a rod off of the east end."

To the reading of this deed in evidence, the plaintiff objected; the objection was sustained, and defendant excepted.

Defendant next proved that Jonas Woods died 1st of October, 1848, and that the persons named in plaintiff's first plea were his legal heirs.

Defendant next offered a transcript of a record of the county court of Fulton county, duly certified as follows : —

1st. Petition for a road, dated August 10, 1837, signed by Ira Woods and 38 others, to the county commissioners' court of Fulton county, asking the court to appoint viewers to lay out a road between St. Augustine, in Fulton county, and McComb, in McDonough county, " beginning on section 5, 8 N. 1 E., where the Knoxville road strikes the Fulton county line; from thence to St. Augustine, and on the best and highest ground to the McDonough county line, on section 31, 8 N. 1 E.," which petition was presented at June term, 1838, of said court. At that term, James Ogden, Oliver Spencer, and John Johnson, were appointed viewers to view and locate the road.

At the September term, 1838, of said court, the viewers made their report, to wit, John Johnson and James Ogden report, that they were duly sworn, viewed the ground, thought the road necessary, and located it as follows, namely, beginning on section 5, 8 N. 1 E. at the point where the Knoxville road strikes the Fulton county line, thence south to St. Augustine, entering the town on Prairie street, thence with Prairie street through said town, thence southerly leaving certain hollows on the left, till the road strikes Cedar creek, thence south-west up the north side of said creek to a place of crossing; thence south-westerly on a ridge till said road strikes the east line of section 18, a few rods south of the north-east corner of said section, thence south-

westerly to the middle of said section 18, a few rods south of its centre, thence south on the middle line of sections 18, 19, 30, and half of 31, thence south-west to the south-west corner of section 31, at the point where McDonough county joins Fulton county.

And in connection with such record, defendant offered to prove by parol, that said road was laid out over the same land, for trespassing upon which this suit is brought.

This evidence was all objected to and excluded, and defendant excepted.

The defendant next offered in evidence, a petition signed by Ira Woods and 48 others, asking the commissioners' court of Fulton county to vacate a part of a road leading from Woodstock to St. Augustine, namely, that part running across the north half of section 19, in township 8 N. 1 E., because it cuts a strip of land $7\frac{1}{2}$ rods wide, for half a mile in length, and divides the house and destroys a part of the orchard and garden, and relay it on the line between the farms, $7\frac{40}{100}$ rods further west, where the road is open, worked, and travelled since the county was established. This petition is dated July 10, 1849; the signature of "Ira Woods" was proved to be his handwriting. This testimony was rejected, and defendant excepted.

Defendant next offered a witness to prove by parol, that a road was laid out in the year 1838, over the identical ground for trespassing on which this action was brought.

This evidence was rejected by the court, and defendant excepted.

It was then admitted that the defendant was a road supervisor for the district where the lands lie and the trespass committed, and was acting in that capacity when he committed the trespass, and attempting to open a supposed public road previously laid out.

It was proved that the title to the north-west quarter of section 19, 8 N. 1 E. was in Ira Woods, before the deeds above named were made.

That when the trespasses complained of were committed, and for several years before, he lived in his house, situated on the north-east quarter of section 19, near the centre of the west line of said quarter; that at that time there was a public travelled road running north and south through the said north-west quarter of section 19, along the west side of plaintiff's fence, which stood about $7\frac{1}{2}$ rods west of the east line of north-west quarter, and which fence made the west fence of plaintiff's inclosure, which inclosure embraced said strip of land $7\frac{1}{2}$ rods wide east side, north-west of section 19, and the whole of north-east quarter

of said section, all of which premises were inclosed by an out-side fence, the west fence thereof being along the east side of said travelled way. The plaintiff had a door yard in front of his house extending to the road, which was inclosed on north and south sides by fences extending to his said west fence, and crossing the 7½ rod tract in dispute, and that plaintiff's north door yard fence crossed the 7½ rod strip of land at a point within the north half of north-west quarter of section 19, and that about half-way between said fence and the north line of said section 19, plaintiff had another fence running from the road east across the 7½ rod tract, to the east line of said quarter section; and that along said travelled way, and between the said division fence and the said north garden fence, the plaintiff had an orchard of fruit trees.

It was then proved, that when the trespasses were committed, there was a public travelled way running north and south on the middle line of section 18 in 8 N. 1 E.; that when it reached the north line of said section 19, it turned off diagonally to the west along plaintiff's west fence till it reached the distance of about 7½ rods west of the east line of the north-west quarter of section 19, when it turned south along plaintiff's west fence, and so continued till it reached near the south line of the north-west quarter of section 19, when it turned diagonally east along the plaintiff's said fence till it reached the centre of the north line of the south half of said section, from which point it con-tinued south through the centre of said tract.

Defendant then proved that, as supervisor, he opened the road by throwing plaintiff's fences down, about the middle of the 7½ rod strip.

It was then proved, that from the year 1837 there had always been a public travelled road running north and south through sections 18 and 19, on the centre line of said sections, and that in 1837, 1838, it passed on the centre of section 19 (being the line on which the alleged trespasses were committed) for 80 rods from the north line of said section. That plaintiff built a fence on west side of his door yard in 1837, by side of the road, and in 1839 he extended that fence north to his north orchard fence.

Defendant introduced several witnesses, whose evidence tended to prove, that when the fence west of the orchard was built, in 1837, it was built two or three rods further west than the old door yard fence, so as to throw the road west, and that the plaintiff then moved his door yard fence further west two or three rods, so as to throw the road that distance further west, where it has since continued. Also tending to prove that plain-tiff's fence along the road between the north-west corner of the

orchard and the north line of section 19, was moved out west by plaintiff two or three rods in 1841 or 1842, so as to throw the road along that part of his fence two or three rods further west.

Plaintiff then introduced evidence tending to prove that said road was substantially on the same ground as in 1837 and 1838, and that plaintiff had not moved his fence west in 1839 and 1841 or 1842.

Defendant next proved by two witnesses, that plaintiff told them before the commencement of this suit, that there was a laid out road over the place where the alleged trespasses were committed.

The jury found a verdict for plaintiff, whereupon the defendant moved for a new trial, for the following reasons : —

1. Because the court erred in excluding from the jury legal evidence offered by defendant.

2. That the court erred in giving to the jury the instructions asked for by plaintiff.

3. Because the verdict was against law and evidence.

Which motion was overruled, and defendant excepted ; whereupon judgment was rendered for plaintiff, and defendant appealed.

This cause was heard before MINSHALL, Judge, and a jury, at April term, 1851, of the McDonough Circuit Court.

H. M. WEAD, for appellant.

O. H. BROWNING, for appellee.

SCATES, J. Trespass *quare clausum fregit.* Plea of *liberum tenementum* in John Woods, Orlando H. Woods, and others, heirs of Jonas Woods, and by leave, &c. Also, that the *locus in quo* was a highway, and plaintiff supervisor, and as such, he removed obstruction, which, &c. Upon these pleas issues were joined.

The first question raised is upon the exclusion of a deed from Ira Woods to John Woods, for the north half of the north-west quarter of section nineteen, in township eight north, range one east, " excepting seven rods, and $\frac{47}{100}$ of a rod, off of the east end," dated 17th January, 1839. An exception, in the same language, is contained in a deed from Ira Woods to Jonas Woods for the south half of the same quarter section, dated same day and year, and which was admitted in evidence.

This deed should have been admitted in evidence, as showing title to part of the quarter section, and tending to show

what title the party might set up and claim by construction of the deed, to the seven $\frac{47}{100}$ rods in controversy. He had a right to introduce such evidence of title as he possessed, and so as to raise a question and obtain a decision upon the proper construction of a deed, under which he claimed rights by license from the grantees to enter upon the excepted strip of land, and do the acts complained of. Every exception in a deed may not be good; and those who have interests to challenge them should have the opportunity and privilege of being heard. See 2 Hilliard on Real Property, p. 352, §§ 134–147.

The objection to the exception for uncertainty is not well taken. The true construction of the deed reserves a strip of land seven $\frac{47}{100}$ rods wide east and west, and extending in length across the quarter section north and south, and will amount to seven $\frac{47}{100}$ acres in quantity. To construe it as reserving only seven $\frac{47}{100}$ rods of land in quantity, would be, in our opinion, against the manifest intention of the party expressed in the deed. 13 Illinois R. 715; 10 Maine R. 396; 10 Mass. R. 186.

The record and proceedings of the county court in relation to the location and establishing a highway over the premises, were improperly rejected. The proceedings took place under the act of 1835. The 11th section provides that three viewers shall be appointed, who shall view the ground, and upon oath shall determine whether they believe the road applied for to be necessary; and if so, they are to locate and report. Here a judgment and discretion are to be exercised. The general rule laid down on this subject is, that where a number of persons are intrusted with powers in matters of public concern, and not of mere private confidence, and all of them are regularly assembled and consulting, the majority may act and determine, if their authority is not otherwise limited and restricted. Grindley *v.* Barker, 1 Bos. & Pull. R. 236; Doughty *v.* Hope, 3 Denio, R. 598; s. c. 353.

But although the report in this case is signed by only two of the viewers, and does not show, nor is there any evidence, that the third viewer was present and consulting; yet according to the presumption held in Doughty against Hope, we shall presume that he was present and consulting, until the contrary is shown.

This presumption is consistent with the principles of evidence applied in establishing the existence of highways and their particular location, by parol evidence, in Lyman et al. *v.* The People, 1 Gilman, R. 8, 9; Nealy *v.* Brown et al. Ib. 12 to 14.

The objection urged against an inquiry into the acts and proceedings of the county commissioners' court, in a collateral pro-

ceeding, has no foundation, under that well settled principle, in this case.   In this case it extends only so far, as to ascertain by their minutes, files, and other proofs, whether the road had been legally laid and established under the law; and does not propose to revise the propriety of its establishment.   These courts have general supervision over county roads; and yet are, to a certain extent, of limited jurisdiction.   Although required to keep written entries of their acts and determinations, they are not required to preserve in writing all the evidence on which they exercise their jurisdiction.   In this connection may be noticed the next question raised in relation to the rejection of a petition by defendant and others, in which the location of the road over the *locus in quo* is described and set forth; and also, of parol proof of the actual location on the same place.   Both should have been admitted.   The first we think competent evidence of defendant's admission; and the last competent evidence to establish the existence of a highway, if travelled, recognized and worked upon as such, to raise a presumption of dedication.   These proofs should all have been sent to the jury, as competent, and tending to prove the issues.

Judgment reversed, and cause remanded.

*Judgment reversed.*