THE TOWN OF OTTAWA and PHILO LINDLEY, Plaintiffs in Error, *v.* GEORGE E. WALKER *et al.*, Defendants in Error.

ERROR TO LA SALLE.

The city of Ottawa has exclusive control over the streets, etc., within its corporate limits ; and the township authorities cannot levy a tax upon the citizens of that city, for the purpose of erecting a bridge within it.

Equity will grant relief where a tax is levied without authority of law, or where it is for fraudulent purposes.

On overruling a motion to dissolve an injunction ; before rendering a final decree, the parties should be heard on the merits of the bill, if a default has not been taken.

THE bill in this case was directed to February term, 1859, of La Salle Circuit Court, but filed November 12th, 1858.

The bill alleges that on the 3rd day of September, 1858, there. was filed in the office of the clerk of the County Court of La Salle county, a certificate in writing, in substance as follows :

" At a town meeting, held at the court house in the city of

Ottawa, on Tuesday, April 6th, 1858, George B. Macey was chosen moderator, and J. D. Pennell, clerk *pro tem.*

" At three o'clock of the same day J. D. Caton presented a petition for a tax of one-half mill on each one dollar valuation of the taxable property in the town of Ottawa, to be assessed for the purpose of repairing roads and bridges; and that the commissioners appropriate $150 of the same towards repairing or building a road or bridge, near the residence of L. Leland.

" And at four o'clock on the same day, L. B. Delano presented a petition for a tax of two mills on each dollar valuation of taxable property, to be assessed for the purpose of building a free bridge across Fox river, near the aqueduct; all of which was presented in due form and unanimously carried."

That about the hour of three o'clock, P. M., of the day on which said town meeting was held, by the direction of the electors then present, the balloting for officers of said town was suspended for the purpose of transacting the general business of the day, and thereupon, said meeting did transact such general miscellaneous business, and the petition presented by Caton was acted upon and the tax therein mentioned voted.

That the aqueduct mentioned in the said certificate is within the corporate limits of the city of Ottawa. That said city is incorporated by an act of the general assembly, approved Feb. 10th, 1853; and that, in and by said charter, exclusive power is given to the city council to open, alter, abolish, widen, extend, establish, grade, pave, or otherwise improve, alter and repair streets, avenues, lanes and alleys, and other public highways, and to establish, erect and keep in repair bridges.

That by Sec. 1, Art. 5. of said charter, it is provided that " the city council shall have power and authority to levy and collect taxes upon all property, real and personal, within the limits of the city, not exceeding one-half of one per cent. per annum upon the assessed value thereof, and may enforce the payment of the same in any manner to be prescribed by ordinance, not repugnant to the constitution of the United States and of this State."

That there is no highway crossing said Fox river at or near the aqueduct, except the same be within the limits of the city of Ottawa.

That by Sec. 4 of an act to incorporate towns and cities, approved Feb. 10, 1849, it is provided that " the corporate authorities of cities, incorporated under any special act, shall have power to pass all the ordinances and by-laws, and possess all the powers authorized under the laws and amendatory acts incorporating either of the cities of Springfield or Quincy."

That by an act entitled " An act to reduce the act incorporating the city of Springfield, and the several acts amendatory thereof, into one act, and to amend the same," approved March 2nd, 1854, and by Art. 5, Sec. 4 of said act, it was provided that " the city council shall have power, within the jurisdiction of the city, by ordinance, to have the exclusive control and power over the streets, alleys and highways of the city, and to abate and remove any of the encroachments or obstructions thereon ; to open, alter, abolish, widen, extend, straighten, establish, regulate, grade, clean, or otherwise improve the same, to put drains and sewers therein, and prevent the encumbering thereof in any manner, and protect the same from any encroachment or injury. To establish, erect, construct, regulate and keep in repair bridges, culverts, and sewers, sidewalks and cross-ways, and regulate the construction and use of the same, and to abate any obstructions or encroachments thereof."

That by Sec. 1, Art. 10, of said city of Ottawa, is is provided that " The inhabitants of the city of Ottawa are hereby exempt from working on any road beyond the limits of the city, and from paying any tax to procure laborers for working on the same."

That the complainants are tax-payers and property owners in the town and in the city of Ottawa.

That the board of supervisors of La Salle county, at their annual meeting, passed an order that said tax for said Fox river bridge be assessed upon said town, and that Philo Lindley, clerk of the County Court, will, unless restrained by the court, extend said tax on the collector's book of said town.

Charges that said two mill tax has never been legally assessed, and that the town meeting had no right to pass any resolution to levy said tax, at the time when the vote, mentioned in said certificate, was taken.

That said certificate does not show that said tax was voted at any town meeting of the town of Ottawa.

That no town meeting had a right to direct the building of a bridge within the city of Ottawa, or to raise any tax therefor, or to direct concerning the location or construction of any bridge or bridges within the city of Ottawa, or to direct the imposition or assessment of any tax for such purpose, but that such power is, by law, vested exclusively in the city ; and that said city council of said city have never directed or permitted the construction or erection of any bridge across Fox river at the point mentioned in said certificate.

The bill prayed that said Lindley be restrained from extending said two mill tax upon the collector's book of the town of

Ottawa, and that upon the final hearing of the bill, the injunction be made perpetual.

The injunction was issued Nov. 13th, 1858, and served Nov. 15th, 1858.

At November term, A. D. 1858, defendants moved to dissolve the injunction, which motion was then and there overruled by the court; and afterwards, and at said November term, A. D. 1858, it was ordered, adjudged and decreed by the court, that the said injunction be made perpetual, and that the said Lindley, his clerks, etc., be forever enjoined from extending said tax upon said tax book.

The errors assigned are:

1st. That the bill contains no equity upon its face, and no matters or things sufficient to authorize the court to grant the injunction, or to render a final decree.

2nd. The court erred in overruling the motion to dissolve the injunction.

3rd. That the defendants were not lawfully before the court, for the purpose of a final hearing, at said Nov. term, A. D. 1858.

4th. That the defendants were not called, or in default at or before the rendition of the decree.

5th. That the court erred in rendering the final decree at a term prior to the one to which the bill was directed.

6th. That the court erred in enjoining the clerk from extending the tax upon the tax book.

7th. That the court erred in rendering said final decree, and in making said injunction perpetual.

D. P. JONES, for Plaintiffs in Error.

B. C. COOK, for Defendants in Error.

WALKER, J. This was a bill filed by complainants, to enjoin the collection of a tax, levied by the town of Ottawa in its corporate capacity, for the purpose of constructing a bridge within the corporate limits of the city of Ottawa. The court below granted the relief prayed, and rendered a decree making the injunction perpetual against the collection of this tax. It is claimed that the city under its charter has the exclusive jurisdiction over roads, streets, alleys and bridges within its limits, while on the other hand it is claimed that the town under the act establishing township organization has a concurrent jurisdiction over the same subjects. The act of the legislature incorporating the city of Ottawa, approved Feb. 10, 1853, Secs. 9 and 10, Art. 5, Sess. L. 300, provides that the city shall have power "To open, alter, abolish, widen, extend, establish, grade,

pave, or otherwise improve and repair, streets, avenues, lanes and alleys, and other public highways. To establish, erect and keep in repair bridges," within the corporate limits of the city. And to enable the city to accomplish this and other objects, by their charter, the common council are authorized to levy and collect a tax, of not exceeding one half of one per cent. per annum, on all real and personal property within the city.

The power to erect, establish and keep in repair the bridges within its limits, is expressly delegated to the city authorities. And there would be no question that it was exclusive, were it not that the legislature by the first and fourth clauses of the first section of the 22nd article, of an act to establish township organization, adopted Feb. 17, 1851, (Scates' Comp. 347,) gives to the commissioners of highways the superintendence and care of roads and bridges, and requires them to give directions for the repairing the roads and bridges, and to cause bridges that have been erected over streams intersecting highways, to be kept in repair, in their respective towns. These provisions must be construed in reference to the object the legislature had in contemplation at the time of their adoption. When the charter was granted to the city, there can be no doubt, that it was the design of the legislature to confer this power upon the city authorities. The language will bear no other construction. And when it was thus conferred, it deprived all other bodies of its exercise. Its exercise is repugnant to that of other authorities, and by implication repealed all other legislation on the same subject, the exercise of which would be repugnant to the power granted to the city. And so much of the act creating township organization was thereby repealed. The power in its very nature would seem to be inconsistent with its joint or concurrent exercise by the two bodies, and even if the city charter was not subsequent in date, unless it plainly appeared from the language employed, that it was intended to be joint or concurrent, it would be held that the power was exclusive in the commissioners beyond the city limits, and exclusive in the common council within their jurisdictional limits, and neither have any power to perform any acts in reference to this subject beyond their respective limits. If the town may erect this bridge, they may by · the same authority open other streets in, and grade and pave those streets and alleys already open in the city. The exercise of such a power by each of these bodies, would necessarily lead to endless strife and confusion, which the legislature never could have intended to produce by these provisions. The levy of this tax by the town was unauthorized, and was an exercise of power not possessed by them, which, for want of such authority, was void.

39

The question then presented is whether a court of equity has power to grant the relief sought. This court in the cases of *Merrit* v. *Farris,* and *Munson* v. *Minor, post,* held, that where a corporation, or an officer, or a body of individuals are vested with the power to levy a tax for a specific purpose, a court of equity will not inquire into the regularity of the exercise of the power, but leave the parties to their remedy at law, unless it is exercised for fraudulent purposes. But when the law has conferred no power to levy a tax, or in case a person or an officer not authorized by law to exercise such a power, shall levy a tax, or when the proper persons shall make the levy for purposes on the face of the levy, not authorized, or for fraudulent purposes, a court of equity may stay its collection by injunction. And this tax having been levied by a corporation, or by persons acting as such, when by law, they were not authorized to assess it, and being so unauthorized, the court had the power to restrain its collection. *Cowgill* v. *Long,* 15 Ill. R. 202; *Shirley* v. *Sabin,* 20 Ill. R. 357.

It was also urged that the court below acted prematurely in rendering a final decree in the case. The bill was entitled of February term, 1859, and was filed during the November term, 1858. The defendants to the bill at that time, entered their appearance, and moved to dissolve the injunction previously granted, the motion was overruled, and a decree rendered making the injunction perpetual. The complainants took no rule on the defendants for an answer, nor did they in any manner put them in default. The bill was not taken as confessed, and no answer or demurrer was filed. The defendant may, according to well settled practice, move to dissolve an injunction, at any stage of a cause, and its being overruled only operates to continue the injunction to a final hearing. The mere motion to dissolve an injunction does not authorize the court, on overruling it, to make the injunction perpetual. The defendant has still the right to be heard on the merits. The court can only render a decree making the injunction perpetual on a bill *pro confesso,* on overruling a demurrer to the bill, or upon a hearing on the bill, answer, exhibits and proofs. The Circuit Court, therefore, erred in rendering the decree in this case, and it must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*

CATON, C. J., took no part in the decision of this case.