COMMISSIONERS OF HIGHWAYS OF THE TOWN OF LAN-
CASTER, IN THE COUNTY OF STEPHENSON,

*v.*

CHARLES BAUMGARTEN.

1. COMMISSIONERS OF HIGHWAYS — *a majority may act.* The commissioners of highways of a town are a *quasi* corporation, and all such bodies act by a vote of a majority, unless there be some provision in the law of their creation to the contrary.

2.   The law giving commissioners of highways power to act in a specified case, the authority is to them in their corporate capacity, and the decision of a majority is the decision of the body.

3.   But, if they were not a corporation, then, the act by which they are appointed being silent as to how many should constitute a quorum, a majority may act.

4.   So, where a number of persons are intrusted with powers in matters of public concern, and all of them are assembled and consulting, the majority may act and determine, if their authority is not otherwise limited and restricted.

5.   And if it shall appear that a majority have acted in any given matter, it will be presumed the others composing the body were present and consulting, until the contrary is shown.

6.   So a contract for building a bridge, signed by two of three commissioners of highways, is binding upon the whole body.

7.   TOWNS — BRIDGES — *liability of towns for building bridges.*   Section 18 of the 17th article of the act of 1861, concerning township organization, prescribing a mode by which the liability of towns for building bridges may be enforced, did not design to create a liability in that regard where none existed before its passage.

8.   Before the passage of that act, as to adjoining towns, there was a mutual liability for the building of bridges over streams dividing such towns, or on the line dividing them, and to such towns the 18th section cited applies, when it declares that the bridges shall be built at the equal expense of said towns without reference to the town lines.

9.   But, where one of two adjoining towns had been relieved of the burden of building bridges, by reason of that subject being committed to other authorities, the other town, which would otherwise have been liable, was also thereby exempted from liability, and to such towns and bridges the act of 1861 does not apply.

10.   SAME — *exclusive liability of the city of Freeport for building bridges within its limits.*   The charter of the city of Freeport gave to the city authorities exclusive jurisdiction over the subject of bridges within its limits, and thereby relieved the town in which the city is located, from that burden : and a bridge being built over the Pecatonica river, at a point where the whole course and width of the river was within the chartered limits of the city, it was *held,* that the adjoining town on the opposite side of the stream, the boundary line of which was the bank of the river on that side, was also exempted from liability to contribute toward the expense of the bridge ; and being thus exempted when the act of 1861 was passed, it was not embraced in its provisions.

APPEAL from the Circuit Court of Stephenson county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

The opinion of the court contains a statement of the case.

Messrs. BURCHARD, BARTON & BARNUM, for the appellants.

Messrs. BAILEY & BRAWLEY, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery exhibited in the Stephenson Circuit Court, by Charles Baumgarten, against the commissioners of highways of the town of Lancaster, and the city of Freeport, both in that county, to compel them to pay for building a bridge across the Pecatonica river, a stream dividing that city from the town of Lancaster.

It appears that appellee had contracted with appellants, and the city of Freeport, to build this bridge according to certain specifications set forth in the contract, to be built entirely at the expense of the appellants and the city, and under the supervision of certain persons appointed by those authorities, respectively. By the contract, the appellants and city of Freeport, agreed to pay appellee thirty-two hundred and fifty dollars, in county, town and city orders, in certain installments, in proportion as the laws of the State make the town of Lancaster and the city of Freeport liable to contribute. The bridge was built and accepted by the city of Freeport, and, on account of some extra work thereon, there was due appellee the sum of three thousand seven hundred and sixty-nine $\frac{6}{100}$ dollars, of which the sum of eighteen hundred and eighty-four $\frac{53}{100}$ dollars, had been paid appellee in county orders of Stephenson county, and one-half of the remainder, being nine hundred and forty-two $\frac{25}{100}$ dollars, had been paid him in city orders of the city of Freeport, leaving the like sum, as appellee claimed, to be paid him by the town of Lancaster, in town orders, of which sum he had been paid five hundred and twenty-five dollars in such orders, leaving due appellee, as he claimed, in like town orders, four hundred and seventeen $\frac{26}{100}$ dollars, which appellants refused to pay him. The prayer of the bill was, that the commissioners should be decreed to pay him this sum in the town orders of the town

of Lancaster, or such sum as might appear to the court to be due him under the contract.

It appears by the answer, that but two of the commissioners signed the contract, and they claimed therefore, that the contract was not binding on the town. The bridge is two hundred and twenty-three feet long, and only sixty feet of it is within the town of Lancaster. By the charter of the city of Freeport, the whole of the river, at the place where the bridge is erected, is within the boundaries of that city; and that by its charter, the city has exclusive control over the streets and bridges within its limits, and is alone liable for the expense of building such bridges. The appellants insist, that neither they nor the town of Lancaster are liable for the expense of building any bridges, except such as may be in the limits of the town, and they insist, that the five hundred and twenty-five dollars paid appellee, by the town of Lancaster, is the full share which it ought to pay for the bridge, and that this amount was paid by the town, and received by appellee, on the understanding if the town was only liable to pay for the proportion of the bridge lying within the limits of the town, then such payment was to be in full discharge of the liability of the town.

There was a stipulation between the parties to the following effect: It is admitted that the "line between the town of Lancaster and the city of Freeport, is the north bank of Pecatonica at the point where the bridge is located. It is admitted that all of sections 31, 32 and 33, in township twenty-seven, range eight, in said county, lying south of the north bank of Pecatonica river, are included in the town of Freeport, and that at the point where said bridge is located, the north bank of Pecatonica river is the boundary line between said towns. It is admitted that the bridge was built according to contract, that about sixty feet of said bridge lies within said town of Lancaster, and that all of said sections north of said north bank are in the town of Lancaster. It is admitted that the town of Lancaster has paid toward the erection of said bridge, a sum proportionate to the part of said bridge lying in the town of Lancaster, and if said town is only liable to build the portion

17—41st Ill.

of said bridge in said town, then, that the town of Lancaster has paid its part of said bridge, and if the town of Lancaster is liable for the payment of one-half of the bridge, then there is due from said town the sum of four hundred and seventeen and twenty-six one-hundredths dollars.

The contract between the parties, and this stipulation, were all the evidence on the hearing of the cause.

The bill was taken as confessed, against the city of Freeport.

The court found, that the bridge was built according to the contract; that the town of Lancaster adjoined the city of Freeport, along the north bank of the Pecatonica river, at the place where the bridge was built; that about sixty feet of the bridge is within the town of Lancaster, and that the sum of $417.26 yet appeared to be due from the town of Lancaster; and ordered and decreed, that the commissioners of highways pay to appellee, within twenty days, that sum, and also the costs, and that the bill be dismissed as to the city of Freeport.

To reverse this decree, the commissioners of highways have taken this appeal.

The first point they make is, that the contract with appellee was not binding, for the reason but two only of the three commissioners executed it.

The answer to this is, that commissioners of highways are a *quasi* corporation, and all such bodies act by a vote of the majority, unless there be some provision in the law of their creation to the contrary. Angel and Ames on Corp. 459; 2 Kent Com. 293. The law giving commissioners of highways power to act in a specified case, the authority is to them in their corporate capacity, and the decision of a majority is the decision of the body. If this was not so, acts of great importance to the public could not be done, if the consent of all was necessary. One obstinate man might defeat important public measures.

But, if they were not a corporation, then, the act by which they are appointed being silent as to how many should constitute a quorum, a majority may act. *Dennis* v. *Maynard*, 15 Ill. 479. So, where a number of persons are intrusted with powers, in matters of public concern, and all of them are assem-

bled and consulting, the majority may act and determine, if their authority is not otherwise limited and restricted. And, where a report is signed by only two of the viewers of a road, it will be presumed the third was present and consulting, until the contrary is shown. *Louk* v. *Woods*, 15 Ill. 256.

The next point made by appellants is, that section eighteen of the act of the general assembly, relied upon by appellee to fix liability upon the town of Lancaster to build this bridge, does not make the town liable, for the reasons, *first*, because that section applies only to a case where any adjoining towns shall be liable, and when the act was passed, the town of Freeport was not liable, the burden having been cast on the city of Freeport, and the town of Lancaster was not liable, no part of the river being within its limits, and as no liability existed, this act could create none; *second*, that this section only purports to apply to towns, and it ought not to be extended to cases to which it does not apply; *third*, the liability of the city of Freeport became fixed by the act incorporating it, and all acts of a local nature were excepted from the operation of the township organization law.

Section eighteen of the seventeenth article of the act of 1861 is as follows:

" Whenever any adjoining town shall be liable to make or maintain any bridge or bridges over any stream dividing such towns, or on the line dividing such towns, such bridge or bridges shall be built and repaired at the equal expense of said towns, without reference to the town lines." Laws of 1861, p. 279.

Before the passage of this act, Freeport had become an incorporated city. The charter was granted in 1857, and by it power was bestowed on the city authorities to open, widen, alter, abolish, extend, establish, grade and pave the streets, etc., and to establish, erect and keep in repair, bridges, and to accomplish these objects, power was granted to levy a tax of five mills on the dollar. Laws of 1855, p. 127. The whole subject of bridges in the city of Freeport was committed by

this act to the city authorities, and the town of Freeport relieved of the burden. The same provision was contained in the charter of the city of Ottawa, and this court held, in the case of *The Town of Ottawa* v. *Walker*, 21 Ill. 605, that the liability of building all bridges situated within the incorporated limits of the city of Ottawa and also within the town of Ottawa, devolved on the city, and for which the town of Ottawa was in no manner liable. Hence it follows, if the decision be correct, which we do not doubt, the town of Freeport, as an adjoining town to the town of Lancaster, had nothing to do with building this bridge, and that the section quoted has no application to the case. The city of Freeport, as agreed by the parties, includes within its chartered limits the whole course and width of the river, which thereby became within the exclusive jurisdiction of the city, and by reason thereof the city became liable to build the bridges over it. This being so, the town of Lancaster, by force of the same reasoning, became exempt from any liability to build a bridge over that stream, it being, at the place where the bridge is erected, entirely within the corporate limits of the city of Freeport, and the act of 1861 did not design to create a liability where none existed before its passage.

Before that act was passed, the burden of building this bridge was on the city of Freeport, neither the town of Freeport, nor that of Lancaster, being under any legal obligation to build it. The act therefore, it is plain, cannot be so construed as to create a liability on the part of the town of Lancaster, where none existed at the time of its passage. As to adjoining towns, such liability did exist, and section eighteen prescribed a mode by which it could be enforced. It being admitted, that about sixty feet of this bridge is in the town of Lancaster, and that it has been paid for by the town, it is unreasonable and unjust, that the town should be required to pay for any portion of the bridge within the chartered limits of the city of Freeport, which the decree requires them to do. It is enough that they pay for the erection of bridges in their own town. The contract has been performed by the town of Lancaster, — they

have paid all they ever engaged to pay, and there is no law making them liable beyond that. The decree, therefore, requiring the town to pay an additional sum of $417.26 on account of this bridge, is reversed, and the bill, as to appellants, dismissed.

*Decree reversed.*