# THE VILLAGE OF MARSEILLES

## V.

# GEORGE HOWLAND.

*Municipal Corporations—Corporate Limits—Navigable Streams—*
*Abandonment of Bridge by Private Corporation—Acceptance—Evidence*
*—Personal Injury—Action for Damages.*

1. The corporate limits of the Village of Marseilles and its streets abutting upon the Illinois river extend to the center thereof.

2. The wrongful act of the Highway Commissioners of a town in maintaining a bridge within the limits of an incorporated village does not relieve the village of responsibility for the condition of such bridge.

3. In an action against the Village of Marseilles to recover damages for a personal injury caused by the falling of part of the north end of the bridge over the Illinois River, it is *held:* That the part of the north end of the bridge in question is within the corporate limits of the village; that the towns of Rutland and Fall River had no power to purchase the bridge and maintain it within said limits; that, upon the abandonment of the bridge by the private corporation which had erected it, the care and jurisdiction over the street on which it was located, reverted to the village and cast upon it the duty to maintain or close up the bridge; that, if any proof of intent were necessary to show an acceptance, the fact that the village gave $800 toward the sum paid to secure the abandonment of the bridge, is sufficient; and that there was no error in giving or refusing instructions.

[Opinion filed May 27, 1887.]

APPEAL from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. MAYO & WIDMER, for appellant.

In order to establish a dedication of land to the public for a way, proof of its acceptance as such by the public, acting through the proper authorities, is essential. Folsom v. Town of Underhill, 36 Vt. 580; Illinois Ins. Co. v. Littlefield, 67 Ill. 368.

And so of a bridge. Town of Rutland v. Town of Dayton, 60 Ill. 58, 67.

The reason is very clear. The repairing of streets and roads

imposes an expense upon a municipality. This liability can only be imposed by law, but if the act of dedication could impose it, then it would be done, not by law, but by the will of the dedicator.    State v. Carver, 5 Strob. 217.

The principle that the burden is one to be voluntarily assumed by the proper authorities is applicable to bridges, such as this, not constructed under the authority of the village. City of Joliet v. Verley, 35 Ill. 63; City of Rockford v. Hildebrand, 61 Ill. 155; City of Alton v. Hope, 68 Ill. 167.

The question of acceptance, or not, is one of intention to be inferred from the acts of the municipal authorities, and the facts established by the evidence; and such inference is one to be drawn by the jury, not by the court.    Folsom v. Town of Underhill, 36 Vt. 580; Town of Rutland v. Town of Dayton, 60 Ill. 58; Town of Dayton v. Town of Rutland, 84 Ill. 279.

This, the vital question in the case, was entirely ignored in the instruction given for the plaintiff, and the court refused every instruction in which it was involved, asked by the defendant.

Neither the appropriation of $800 by the Board of Trustees, nor the fact that the bridge remained open to public travel, nor both combined, constituted, *per se*, an acceptance of the bridge by the village, nor do they afford a legal estoppel against it.    Rutland v. Dayton, 60 Ill. 58; Dayton v. Rutland, 84 Ill. 279.

Messrs. BULL, STRAWN & RUGER, for appellee.

The Village of Marseilles was by law intrusted with the care, custody and control of the streets and bridges within its corporate limits.    Town of Mechanicsburg v. Meredith, 54 Ill. 84; Browning v. Springfield, 17 Ill. 143; Ottawa v. Walker, 21 Ill. 605; Kreigh v. City of Chicago, 86 Ill. 407; People v. Board of Supervisors, 111 Ill. 527.

That the corporate limits of the Village of Marseilles extended to the center thread of the river can not be questioned. Village of Brooklyn v. Smith, 104 Ill. 429; Piper v. Connelly, 108 Ill. 646; Braxon v. Bressler, 64 Ill. 488; Cobb v. Lavalle, 89 Ill. 331; C. & P. R. R. Co. v. Stein, 75 Ill. 41;

City of Chicago v. Laflin, 49 Ill. 172; Canal Trustees v. Havens, 11 Ill. 554; City of Chicago v. McGinn, 51 Ill. 266.

If a bridge is built, no matter by whom, whether by the public authorities, by private subscription, or as a private enterprise, and it is abandoned to and used by the public and becomes of general utility, it becomes a public charge, and the authorities intrusted with the care of the bridge and of the street upon which the bridge is situated will be held liable for its unsafe condition. The village, of course, was not bound to accept the bridge, but it was bound to see that no structure existed upon its streets of a dangerous character. It might have removed the bridge, condemned it as a nuisance, so barricaded it that the public could not use it, but if it failed to do either one of these things, and permitted the public to use the same without let or hindrance, the bridge necessarily became a part of the streets and highways of the village, that the village authorities were bound to keep in order. A bridge is a part of a street, as much so as a street crossing or a side-walk. City of Chicago v. Powers, 42 Ill. 169, 172; Requa v. City of Rochester, 45 N. Y. 129; Dygert v. Schenck, 23 Wend. 445.

The wrongful acts of one set of officers within the limits of a municipal corporation, by usurping their franchises and assuming the performance of the duties imposed upon the officers of such corporation, can not be held to relieve it from liability. Town of Mechanicsburg v. Meredith, 54 Ill. 84; Kreigh v. City of Chicago, 86 Ill. 407.

Unless this bridge was a public charge, and one which the Village of Marseilles was bound to maintain, the Trustees had no authority or right to appropriate money from the village treasury for the purpose of purchasing the right of way across this bridge. See Rutland v. Dayton, 60 Ill. 58; Dayton v. Rutland, 84 Ill. 279.

LACEY, J. This was an action on the case by appellee against appellant, to recover damages for an injury received by him, occasioned by the falling of a part of the north end of the bridge over the Illinois River, in the corporate limits of the

Village of Marseilles, upon which he was passing September 10, 1883, and of which bridge, he alleges, appellant then was possessed and had control and was bound to keep in repair.

A trial was had and a verdict of a jury for appellee for $5,500. A motion for a new trial was overruled by the court and judgment rendered on the verdict. There is no question made but that the bridge was out of repair and dangerous, or that the appellee was in the exercise of due care at the time the bridge gave way, and the appellee and his team and buggy were precipitated into the Illinois River, nor is there any question made that the damages were excessive. The only point made by the appellant of any importance is that the appellant was not legally bound at the time the accident occurred to keep the bridge in repair; that it had never *accepted* the bridge as a part of the highway of the village. Therefore, it is argued, appellant was not responsible for the bad condition of the bridge. This is the main question in the case. The facts are not much, if any, disputed, and whether or not the appellant was bound, under the law, to keep the bridge in repair is mostly a deduction of law as to its duty under all the circumstances. The facts in regard to the building and maintaining of the bridge are about as follows: The Illinois River is the southern boundary of the Village of Marseilles, and is the boundary line between the towns of Rutland and Fall River, the former town in which the village is situated lying north and the latter town south of the river.

The bridge was originally built in 1865, by the Marseilles Bridge Company, a private corporation organized under a special act of the Legislature in force February 13, 1865, entitled "An Act to Incorporate the Marseilles Bridge Company." See Private Laws 1865, p. 188.

By this charter, the company was empowered to construct and maintain a bridge over and across the Illinois River, at or near Marseilles, in the County of La Salle, from a point where Milwaukee Street, now Main Street, in the old Town of Marseilles, intersects said river on the north bank, to a point on the south bank of said river, etc., etc., and the company was authorized, for the purposes of the bridge, to use so much of

said Milwaukee Street, and the highway opposite, and the bed of the river, etc., as was necessary. It also gave to the company the right to collect tolls and was required to keep open the bridge for public travel, and to keep the same in repair. It seems that said Milwaukee Street, at the time the bridge was built, was not improved or traveled to the river, and not for a considerable distance therefrom, but that the bridge company improved it and used it for an approach to its bridge, and that this portion of said street was maintained by the company during the time it owned and used the bridge, and not by the village. At the January session of the Board of Supervisors of La Salle County, the Commissioners of Highways of Rutland, procured it to appropriate the sum of $3,500 in aid to purchase the bridge for a free bridge, and they caused the Town of Rutland to appropriate the sum of $3,200 for the same purposes, and the citizens on the south side of the Illinois River subscribed for same purpose the sum of $1,336, and the Board of Trustees of the Village of Marseilles, at a meeting held February 5, 1878, adopted the following resolution : "Resolved : That we appropriate to the Commissioners of the Town of Rutland, the sum of $800 for the purpose of the buying the right of way across the Illinois River bridge at Marseilles."

In consideration of these sums, which amounted to the sum of $8,836, the bridge company sold and transferred to the towns of Rutland and Fall River all its right, title and interest in and to said bridge with its appurtenances, save the toll house. The said Commissioners of Highways of Rutland and Fall River immediately made said bridge a free bridge, and the bridge was ever after, till after the accident happened, maintained as a free bridge for the use and benefit of the public, and so far as it was kept in repair it was done by the Highway Commissioners of the Town of Rutland and appellant never looked after or maintained it in any way, and the original bridge company entirely abandoned it and never looked after it more. The Town of Marseilles was incorporated under special charter in 1861, Private Laws 1861, p. 698, under which it was acting when the accident happened, though it has since adopted the general incorporation act for villages.

The special act contained the usual provisions concerning the powers and obligations of the village to maintain streets and bridges within its incorporate limits, imposing upon the village the duty to keep the streets and bridges belonging to the village in a reasonably safe condition for travel.

The corporate limits of the village by the terms of its charter and as matter of law, extended to the middle of the Illinois River as did Main Street, formerly Milwaukee Street, extend to the borders of the village, that is, to the center of the stream. City of Chicago v. McGinn, 51 Ill. 266; Village of Brooklyn v. Smith, 104 Ill. 429. The spot where the span of this bridge fell and carried down the appellee was near the north bank of the river and in said Milwaukee or Main Street and within the territorial limits of the village.

The appellant objects to the giving of the appellee's fourth instruction, on the point of the acceptance by the Village of Marseilles of the bridge in question.

The instruction complained of recites the facts as above declared, or the most of them, and then tells the jury that such facts " alone did not impose upon said defendant the duty and burden of maintaining and keeping in repair said bridge unless said village in some way accepted said dedication or recognized or permitted said bridge to remain a part of one of its streets ; and whether or not said village did so accept or recognize or permit said bridge is a question for the jury to determine under all the instructions and evidence."

Although the facts were not disputed the court appeared to leave the entire matter to the jury to say what obligation the facts imposed on the village with reference to the bridge. The appellant's counsel take exception to that portion of the instruction which he claims tells the jury " if the appellant permitted the bridge to remain as a part of one of its streets " their liability attached to keep the bridge in repair under the charter.

The instruction when taken together as a whole, probably does not bear such interpretation. It tells the jury in substance that such " permission " may, with the other facts recited, be taken into account in determining the question of acceptance of the bridge.

Village of Marseilles v. Howland.

We think that there is nothing in the instruction that the appellant can complain of; indeed it might have been much stronger. It will be seen that the village was chartered in 1861, and that Milwaukee Street was one of the streets of the village at the time the bridge charter was granted by the Legislature. By the bridge charter the company was given the right to exercise control over that portion of Milwaukee Street necessary to be occupied by the northern approach of the bridge. This act for the time being, and while the bridge was kept as a toll bridge, released the village from the maintenance of that portion of the street, and cast it upon the bridge company. The towns of Rutland and Fall River had no power to purchase and maintain the bridge inside the corporate limits of appellant, nor could they conduct a toll bridge.

The money that was appropriated by the different parties to purchase this bridge was given in order that the bridge might be thrown open to the public. The Town of Rutland, it is true, after the bridge was deeded to it, incurred the expense of maintaining and repairing it, although it was situated in the incorporated village of appellant, and although this was wholly illegal. The Town of Rutland had no legal authority to levy taxes for such purposes, and as a consequence neither town could hold the said bridge in their corporate capacity. This question has often been decided. Ottawa v. Walker, 21 Ill. 605; Commissioners v. Baumgarten, 41 Ill. 254; The People v. Supervisors, 111 Ill. 527; People v. C. & N. W. R. W. Co., 118 Ill. 520. What position then did this deed from the bridge company and the accompanying abandonment of all control and care of the bridge place this street and bridge in? It could have no other effect than an entire renunciation and abandonment of its charter and the bridge property, and the care and jurisdiction over the street on which the bridge was located would, of necessity, fall back to the original authority, that is, the Village of Marseilles which held a prior charter and right by legislative grant.

It required no further acceptance to give the appellant full control over the street or to make the street a legal street of the village. This acceptance had been accomplished long be-

fore the abandonment, to wit, in 1861, when the village charter was granted and the street laid out by the town. Whether that was before or after its charter, it required no new acceptance. Appellant had no power to abdicate to the Town of Rutland its care and legal obligations over Main Street and the bridge thereon. Town of Mechanicsburg v. Meredith, 54 Ill. 84; Kreigh v. City of Chicago, 86 Ill. 407. A bridge is as much a part of the street as any other portion. City of Chicago v. Power, 42 Ill. 169.

When the street came back under the jurisdiction of appellant the bridge was upon it and the duty was upon appellant either to keep it in repair or close it up. It did neither. It allowed others who had no authority within the limits of the village to look after it, and allowed the bridge to be kept open for travel when it was in a dangerous condition, whereby appellee was seriously injured. If any proof of an intent were necessary to show an acceptance, the fact that the appellant gave $800 to procure the abandonment of the bridge charter by the bridge company and to make the bridge free, we think would be ample. This was probably the only legal donation that was made save of the private subscriptions and possibly that of the Supervisors of La Salle County.

On the point of acceptance this case is not to be likened to the case where some person lays out and improves a new street and dedicates it to the public. In that case an acceptance is necessary in order to fix the obligation on the municipal authorities to repair it, though this will sometimes be inferred from slight acts of the authorities. It is not necessary for us to discuss that question here because it does not arise.

We see no error in the action of the court below in refusing to give appellant's instruction No. 8 and other instructions, or in refusing to allow the evidence on part of appellant, which was rejected for the reason that from the facts indisputably proven the law fixed the obligation on the appellant to look after the bridge or at least that portion on Main Street, and either keep it in repair or close it up from travel, and the instructions asked, if given, nor the admission of the evidence offered could have changed the result.

There was no variance between the proof and declaration, for the proof showed appellant had the legal possession and control of the bridge.

Perceiving no error in the record the judgment is affirmed.

*Judgment affirmed.*