THE PEOPLE *ex rel.* Edwin G. Stifle, County Collector, Defendant in Error, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed December 16, 1914.*

· 1. TAXES—*certificate of levy of a per cent is not necessarily invalid.* Certificates of levy of a special hard roads tax of "¼ per cent" and "¾ per cent" on each $100 assessed valuation, mean, respectively, twenty-five cents and seventy-five cents on each $100 assessed valuation, and are not invalid upon the ground that the extent of the levy is uncertain.

2. SAME—*petitioners may ask for kind of hard road they desire.* Parties petitioning for a hard roads election may specify the kind of hard road they desire, so long as the petition, notice of election and ballot agree; and it is not necessary that the petition use all the words, "gravel, rock, macadam or other hard roads,"' which are contained in the statute.

3. SAME—*what does not invalidate the hard roads tax.* The fact that the election authorizing the levy of a hard roads tax was held under the Hard Roads act before its repeal by the Roads and Bridges act of 1913, does not, of itself, invalidate the tax. (*People* v. *Cairo, Vincennes and Chicago Railway Co.* 265 Ill. 634, followed.)

4. SAME—*a village may levy a tax for repairing and building bridges.* A village has authority to levy a tax for repairing and building bridges within its limits, notwithstanding sections 50, 52 and 59 of the Roads and Bridges act of 1913, as the provisions of such sections are substantially the same as those in the former Roads and Bridges act, which have never been construed as depriving a city or village of the right to construct and maintain bridges within its corporate limits.

5. SAME—*court may permit village seal to be attached to certified copy of ordinance.* Upon application for judgment and order of sale it is proper for the court to permit the village seal to be attached to the certified copy of the ordinance filed with the county clerk upon which the tax was extended.

6. SAME—*when tax for building purposes is proper.* A tax for building purposes to pay the balance due contractors on a school building and for interest and early-maturing payments of the principal of bonds issued to obtain money for the building is proper.

7. The other questions raised are controlled by the decisions in *People* v. *Kankakee and Seneca Railroad Co.* 265 Ill. 497, and *People* v. *Illinois Central Railroad Co.* 265 id. 429.

WRIT OF ERROR to the County Court of Crawford county; the Hon. JOHN C. MAXWELL, Judge, presiding.

GEORGE N. PARKER, (JOHN G. DRENNAN, of counsel,) for plaintiff in error.

JOSEPH B. CROWLEY, State's Attorney, (PARKER & EAGLETON, of counsel,) for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Upon the application to the county court of Crawford county by the county collector for judgment and order of sale of the property of plaintiff in error for delinquent taxes the various objections of plaintiff in error were overruled and judgment and order of sale entered accordingly. To reverse that judgment plaintiff in error has sued out this writ of error.

The first objection relates to the county tax for State aid roads. The questions raised were determined adversely

to the contentions of plaintiff in error in *People* v. *Kanka-kee and Seneca Railroad Co.* 265 Ill. 497, *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* (*ante,* p. 98,) and *People* v. *Chicago, Burlington and Quincy Railroad Co.* (*ante,* p. 63,) and for the reasons there given the objections to this tax were properly overruled.

Fifty-three dollars and fifty-three cents of the road and bridge tax of the town of Oblong was objected to on the ground that the town of Oblong was operating under the labor system and amounts aggregating $53.53 were paid by plaintiff in error in labor in the various road districts in which its property was subject to taxation. The question raised under this objection has also been determined at the present term in *People* v. *Illinois Central Railroad Co.* 265 Ill. 429, and for the reasons there given the court properly overruled that objection.

The hard road tax of the town of Oblong, amounting to $520.63, was objected to. That tax was extended upon two certificates made by the highway commissioners of said town, one certificate levying "special tax of ¼ per cent for five years on each $100 assessed valuation," and the other, "special tax of ¾ per cent for five years on each $100 assessed valuation." It is the contention of plaintiff in error that each of these certificates is defective, in that it calls for a levy of a per cent for five years on each $100 assessed valuation instead of a stated amount, and that the extent of the levy is uncertain and indeterminable for the reason that the expressions "¼ per cent" and "¾ per cent" are meaningless. We cannot agree with this contention. In *People* v. *Chicago and Alton Railroad Co.* 248 Ill. 87, where the sufficiency of a certificate levying a certain rate per cent instead of a specific amount of money was under consideration, we said: "A certificate for the levy of a certain per cent might or might not work an injustice to tax-payers, depending upon the amount produced, and if the result is not different from what it would have been if an amount

had been stated, the substantial justice of the tax is not affected." Here the result is not different from what it would have been if the amount had been stated. It is apparent that one certificate authorized the levy of twenty-five cents for five years on each $100 valuation and the other authorized a levy of seventy-five cents for five years on each $100 valuation. There is no merit in the contention that the language of the certificates in specifying the amount to be levied on each $100 assessed valuation is meaningless. One-fourth per cent of $100 is therefore found by computation to be twenty-five cents and three-fourths per cent to be seventy-five cents, or a total of one dollar upon each $100 assessed valuation for hard roads for the town of Oblong.

It is further objected that each of the two petitions for the building of hard roads in the town of Oblong is defective for the reason that each petitions for an election upon the question, "For the purpose of constructing and maintaining crushed rock roads in said town," whereas the statute prescribes that the petition shall be, "For the purpose of constructing and maintaining gravel, rock, macadam or other hard roads." The petitioners have the right to determine the kind of road on which they will ask for the vote of the town. If they see fit, they may petition for a vote upon levying a tax for gravel, rock, macadam or other hard roads in the language of the statute, thus leaving the character of the road to be determined by the highway commissioners. On the other hand, they may petition for a vote upon a particular kind of hard road, in which event the vote must be had upon that proposition and cannot be extended to other kinds of roads. *People* v. *Kankakee and Seneca Railroad Co.* 248 Ill. 114.

It is further contended that the hard roads tax is invalid for the reason that the election authorizing the levying of said tax was held under the Hard Roads law of

1883, which was expressly repealed by the present Road and Bridge act approved June 27, 1913, without any saving clause. This question has been determined contrary to the contentions of plaintiff in error at the present term in *People* v. *Cairo, Vincennes and Chicago Railway Co.* 265 Ill. 634.

The road and bridge tax in the village of Stoy, amounting to $600, was objected to upon the ground that the village had no authority to levy a tax for repairing and building bridges. In support of its contention that this objection should have been sustained plaintiff in error relies upon the Road and Bridge act of June 27, 1913, (Laws of 1913, p. 520,) and cites sections 50, 52 and 59 of that act. By said section 50 one of the duties of highway commissioners is defined to be, "to direct the construction and repair of roads and bridges within the town," etc. By said section 52 it is made the duty of the treasurer of the commissioners of highways to receive and have charge of all moneys raised in the town or district for the support and maintenance of roads and bridges therein, excepting such portions as are thereinafter directed to be paid to the authorities of incorporated villages, towns and cities. By said section 59 it is provided that one-half of the tax required to be levied in section 56 and collected for road and bridge purposes on the property lying within an incorporated village in which the streets and alleys are under the care of the corporation shall be paid over to the treasurer, to be appropriated to the improvement of streets, roads and bridges. These provisions are the same, in substance, as those contained in the former Road and Bridge act which was repealed by the present act, and it has never been held that under those provisions a city or village was deprived of the right to construct and maintain the bridges within its corporate limits. By paragraph 62 of the Cities and Villages act, cities and villages are given the power to lay

out, establish, open, alter, widen, extend, grade, pave or
otherwise improve their streets and alleys; to construct and
keep in repair their bridges, viaducts and tunnels and to
regulate the use thereof; to control the finances and prop-
erty of the corporation; to appropriate money for corpo-
rate purposes, and to levy and collect taxes for general and
special purposes on real and personal property. In *Town
of Ottawa* v. *Walker*, 21 Ill. 605, the question of the right
of the township to levy a tax for the purpose of erecting
a bridge across the Fox river within the corporate limits
of the city of Ottawa was before us, and while the city of
Ottawa was organized under a special charter, what was
there said in passing upon the question raised is applicable
to the situation here. In speaking of the power of the city
of Ottawa to erect, establish and keep in repair the bridges
within its limits, which was expressly delegated to it, and
of the authority vested in the commissioners of highways
by the statute for the superintendence and care of roads
and bridges, and the duty devolving upon them to cause
bridges that had been erected over streams in certain town-
ships to be kept in repair in their respective towns, we said:
"When the charter was granted to the city, there can be
no doubt that it was the design of the legislature to confer
this power upon the city authorities. The language will
bear no other construction. And when it was thus con-
ferred it deprived all other bodies of its exercise. Its ex-
ercise is repugnant to that of other authorities, and by im-
plication repealed all other legislation on the same subject
the exercise of which would be repugnant to the power
granted to the city, and so much of the act creating town-
ship organization was thereby repealed. The power, in its
very nature, would seem to be inconsistent with its joint
or concurrent exercise by the two bodies, and even if the
city charter was not subsequent in date, unless it plainly
appeared from the language employed that it was intended

to be joint or concurrent, it would be held that the power was exclusive in the commissioners beyond the city limits and exclusive in the common council within their jurisdictional limits, and neither have any power to perform any acts in reference to this subject beyond their respective limits." The village had the right to levy this tax, and the objection based upon this ground was properly overruled.

It is further contended that as the seal of the village was not attached to the copy of the ordinance filed with the county clerk upon which the tax was extended the levy of the tax was invalid. The objection made on this ground was that the clerk of the village of Stoy did not attach the village seal to the certificate certifying the passage of the appropriation ordinance. There is no proof in the record as to the appropriation ordinance. The only ordinance in the record was the one certified to the clerk, which was the tax levy ordinance of the village. However, although the objection made was not applicable to the ordinance involved, on the hearing the court properly permitted the seal of the village to be attached to the certified copy of the tax ordinance and removed this ground for objection.

The school tax of district No. 87 in the amount of $247.60 is objected to upon the ground that the levy of $7000 by the district for building purposes was unauthorized. The only proof in the record as to whether or not any amount was required for building purposes by the district was the testimony of the school treasurer of the town, who testified that in November, 1911, the school building of district No. 87 was burned; that the district collected $22,000 insurance on the building and furniture and thereafter constructed a new building, which cost about $42,000. This building was finished about the time the certificate of levy was made for this tax by the board of directors. The school treasurer testified that at the time the levy was made the district owed the various contractors who were engaged

in the erection of the building the sum of $4000, and that there was then outstanding $10,000 in bonds which had been issued to provide money for the erection of the building, upon which there was then due the principal sum and $600 in interest. A portion of these bonds became payable on July 1, 1914. It is the contention of plaintiff in error that this tax is a fraud upon the tax-payers, for the reason that it is evident it was not levied for the purpose specified in the certificate of levy. Under the statute the board of directors are permitted to levy a tax for two purposes, only: a tax which shall not exceed one and one-half per cent upon all the taxable property of the district for educational purposes, and a tax for the same amount for building purposes. Under the designation of "building purposes" the board is directed and authorized to levy a tax for the payment of all sums expended and obligations incurred for the improvement, repair or benefit of the school buildings and property. It became necessary for the district to issue its bonds to secure money to erect the new building. In order to pay the balance due the contractors at the time the levy was made and to meet the payment of the bonds which would fall due on July 1, 1914, it was the duty of the board of directors to make the required levy to meet these obligations under the head of building purposes.

It is contended by plaintiff in error that the judgment of the court is informal and for that reason insufficient, but as the judgment is not contained in the abstract we are unable to determine that question.

The judgment of the county court is affirmed.

*Judgment affirmed.*