# THE PEOPLE *ex rel.* The City of Bloomington,

*v.*

# THE CHICAGO AND ALTON RAILROAD COMPANY.

1. RAILROAD—*duty to furnish convenient crossings at highway intersec-tions.* In the absence of express provision in its charter to the contrary, a railway company is under obligation to leave every highway that it crosses in a safe condition for the use of the public; and where this duty was imposed by the original charter under which a road was built, the same duty will rest upon any company who may afterwards own the road, so long as the same is operated.

2. SAME—*change in place of intersection.* Where the municipal author-ities, with the assent of a railroad company, discontinued a road-crossing which was considered dangerous, and substituted another a short distance from the old one: *Held,* that such change did not exonerate the company from keeping up such new crossing.

3. Where a railroad company is bound to keep in proper condition its intersections with highways that it might cross in the construction of its road, it will not be relieved of its obligation merely because of a slight deflection of a highway by the proper authorities so as to change the pre-cise place of crossing.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was an application for a *mandamus,* by the city of Bloomington against the Chicago and Alton Railroad Company, to compel the latter to construct a crossing at the inter-section of its road with a certain public street. The facts of the case are fully stated in the opinion of the court.

Mr. IRA J. BLOOMFIELD, for the appellant.

Messrs. WILLIAMS & BURR, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

This was an application on the part of the city of Bloom-ington, to compel the Chicago and Alton Railroad Company

to construct a crossing at the intersection of their road and Front street in said city.

It appears that, long prior to the building of the railway, a public road led from Bloomington to Pekin, which was known as the Pekin road. The railway crossed this road at grade a short distance south of the place to which the present controversy relates. It was, however, a dangerous crossing, and in 1862 it was decided, with the concurrence of the railway company, to open out Front street until it should intersect with the Pekin road, and to abandon the old crossing and construct a new one where Front street would cross the railroad. At this point the railroad passed through a cut, and the crossing, being a bridge, would be safe alike for the company and the public. The company contributed $100 and transported three car loads of lumber without charges for freight, and the city paid $130 towards the bridge. As soon as it was completed, the company closed the old crossing by a fence, which it has maintained to the present time, and the travel has passed over the bridge and new road, which are now a part of Front street. The bridge has now become unsafe, and the question presented by this record is, whether the obligation to furnish a safe crossing to the public rests upon the railway company or the city.

It is a well settled principle of the common law, resting upon the most obvious considerations of justice, that any person or corporation that cuts through a highway for the benefit of such person or corporation, must furnish to the public a proper crossing, even though acting under a license from the proper authorities. We refer, of course, to cases where the legislative power has not, in terms, relieved the person or company that interferes with a highway, from the necessity of removing any obstructions they may create. In the absence of such an express provision, it is palpable that a railway company is under obligation to leave every highway that it crosses in a safe condition for the use of the public.

As illustrating the common law rule, we refer to *Queen* v. *Inhabitants of Ely*, 69 E. C. L. 843.

But, independently of the duties imposed upon this respondent by the common law, the charter under which the road was constructed expressly required it to restore to its previous usefulness any highway that it might cross. While the charter of the existing company is silent upon this point, yet, as it was created for the purpose of purchasing the franchises of the pre-existing companies and the road built by them, and has so purchased, it must be held to have assumed the same duties towards the public that were imposed by the preceding charters.

An obligation to keep up a crossing, imposed as a condition of the right to cross a highway, must be regarded as necessarily attaching to whatever person or corporation may be the owner of the road as long as the right is exercised. It is a continuing condition inseparable from the enjoyment of the franchise.

Counsel for respondent do not deny these legal principles, but they insist that, the existing road having been laid out by the township after the railway was built, the respondent is under no obligation to keep up the crossing.

It is urged by counsel for the relator, in answer to this position, that the new crossing was established by the common consent of the company and the public, as a substitute for the old one, and the same obligations rest upon the company in regard to the existing crossing that it assumed in regard to the old Pekin road, when it first laid its track across that road. The evidence in the record compels us to the same conclusion.

The township authorities declined to act in regard to the extension of Front street, so as to change the place of crossing the railway, until the assent and coöperation of the company were secured. It was for its interest the change should be made, as the former crossing was dangerous, and accidents

had already occurred.   As the city should increase in population these accidents would increase in number, thus exposing the railroad company to frequent litigation and heavy loss.   This consideration furnished ample motive for desiring a change, and when the new crossing was made, the old one was at once closed by the company against the public.   To secure this change, the company had been willing to contribute freely towards the expense.   Having thus secured such a change in the place of crossing as it desired, it can not be permitted to claim that it has also accomplished a result which could not have been in the contemplation of the parties at the time, and relieved itself forever of a liability which is admitted to have existed in regard to the old crossing.

It is not necessary to discuss the question whether the legislature could authorize the city of Bloomington to require the railway company to construct safe crossings at the intersection of all streets, without reference to the question whether the streets were laid out before or after the construction of the railway.

Although, by way of distinction, we have spoken of the crossing in question as a new crossing, it is in fact merely the removal of an old crossing to a new place, some three hundred feet distant.   The road leading out of Bloomington towards Pekin was changed from an oblique to a straight course, but it was but the substitution of one line for another, and this having been done with the full concurrence of the company, the new crossing, so far as concerns the liability of the company, stands in place of the old.

If the railway company was bound to keep in proper condition its intersections with highways that it might cross in the process of construction, it is apparent that it would not be relieved of its obligation merely because of a slight deflection of a highway by the proper authorities, so as to change the precise place of crossing, and such a claim becomes the more unreasonable when the change has been made with the full concurrence and coöperation of the company.

We are of opinion that a peremptory *mandamus* should be awarded.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCOTT took no part in this decision.