The People v. The Lake Shore & Michigan Southern Railway Company.

*Highway—Construction thereof at railway crossings.*

1. The Highway Law of 1881, in providing that where any highway is established across a railway the railroad shall open, construct, and maintain the highway and the necessary crossing therefor across its right of way and tracks, cannot be so construed as to compel the company to build that part of a highway which would cross its right of way, if the highway itself is not made necessary by the existence of the railroad.

2. The right of property to govermental protection does not depend
upon whether its owner is a natural or artificial person; nor upon his
social advantages, nor on the form of the property, provided it be
lawful. And the violation of the duty to protect it is not merely
a political non-feasance, but an assault on the owner's right and a
breach of that trust which the institution of government implies.

Error to Ingham. (Gridley, J.) Oct. 19.—Dec. 21.

Assumpsit. Plaintiff brings error. Affirmed.

*J. E. Nichols* and Attorney General *Jacob J. Van Riper*
for appellant. Railroad companies may be required by
statute to fence their tracks and place cattle-guards thereon
and plank their crossings: *Wilder v. Maine Central R. R.*
65 Me. 332; *Bemis v. Connecticut R. R.* 42 Vt. 375; *Com-
monwealth v. Eastern R. R.* 103 Mass. 254; *Fitchburg R.
R. v. Grand Junction R. R.* 4 Allen 198; *Com. v. Essex
R. R. Co.* 13 Gray 239, 253; *State v. Noyes* 47 Me. 189;
*Indianapolis R.R. Company v. Townsend* 10 Ind. 38; *Kan.
Pac. R. R. Co. v. Mower* 16 Kan. 573; *New Albany R.
R. Co. v. McNamara* 11 Ind. 543; *Pennsylvania R. R.
Co. v. Riblet* 66 Penn. St. 164; *Flint & Pere Marquette
Ry. v. Lull* 28 Mich. 515; and such statutes will bind
whether passed before or after the organization of the rail-
way company: *Staats v. Hudson River R. R.* 4 Abb. & App.
Dec. 287; *Sawyer v. Vermont & Mass. R. R. Co.* 105 Mass.
196.

*Ashley Pond* for appellee. The ostensible and immedi-
ate controversy in this case is with reference to the insig-
nificant sum of ten dollars. But its determination involves
an answer to questions of grave and serious import to every
railroad company organized under the laws of this State
and particularly to every railroad company so organized
since the adoption of the Constitution of 1850, to wit:
*Whether any such company has any right, property or
other, which is within the protection of that Constitution or
of the Constitution of the United States, or whether every
such company holds its property, lands, tenements, goods,
chattels, money and effects, acquired by use of the capital*

*contributed by its stock-holders, or otherwise, as, it must be admitted, such companies organized since 1850 hold the rights, privileges and franchises conferred upon them by the sovereign power of the State, solely at the sweet will of that power, as represented from time to time by the wisdom and justice of its legislative department.*

I. A definite comprehension of the intent and effect of the statute, the validity of which is in question, will aid in reaching a right conclusion. The intent of the statute is clear. It is to impose upon railroad companies, as a duty, the burden of constructing and maintaining, at their own expense, highways, or portions of highways, for the use of the public; and, if held valid, its effect will be in accordance with such intent. It is material to note that the duty and burden thus sought to be imposed upon each railroad company, in this State, is not limited to the construction and maintenance of such highways, or portions of highway, as have been or may be rendered necessary for the convenience of the public, by the construction and maintenance of its road, or to the payment of such extra cost of constructing and maintaining particular highways as have been, or may be so caused. The cost of constructing and maintaining many highways in this State, which cross railroads, is not increased by the fact of the existence of the railroads, which they so cross, beyond the expense of putting down and maintaining planks between and on each side of the rails ; and there are many more, the cost of which is not increased beyond such expense and the expense of constructing approaches to the track. The effect of the statute under consideration is therefore to compel railroad companies to appropriate a portion of their capital or earnings for the benefit of the public, in reference to a matter in no wise directly or indirectly connected with, or growing out of the exercise of the franchises granted to them by the State, or with the manner in which they make use of their property.

II. The property of railroad companies is private property in the same sense and to the same extent and as such is under the same constitutional protection, as is the property

of natural persons : *People v. Salem* 20 Mich. 452; *Detroit v. Detroit & Howell Plank Road Co.* 43 Mich. 140 ; *Grand Rapids, Newaygo & Lake Shore R.R. Co. v. Grand Rapids & Indiana R. R. Co.* 35 Mich. 265. Authorities may be cited which, it must be conceded, seem to be adverse to the doctrine in this State, as above stated. Thus, *Albany &c. R. R. Co. v. Brownell* 24 N. Y. 345, holds that the Legislature may authorize the construction of highways across the right of way of railroad companies without compensation upon the ground " that the title to the land acquired for such right of way is qualified as being taken for public use;" and hence, for such is the logic of the reasoning, that the Legislature may, in its discretion, subject such lands in the hands of a railroad company to an additional public use; and there are like cases to be found elsewhere. The criticism to be made upon these cases, and it is a fatal criticism, is that they wholly fail to distinguish between the ownership of property, and an obligation resting upon an owner of property to use it for a particular purpose, and in a particular manner; or perhaps more correctly stated, they wholly misinterpret the effect upon the title or ownership of property, of an obligation resting upon the owner to use only for a particular purpose or in a particular manner. When a railroad company acquires by purchase for a consideration, or otherwise, lands for right of way, or property of any kind for use in the exercise of its franchises, unquestionably it becomes under obligation to use such land or other property only for a particular purpose and in a particular manner, to wit : for the purpose for which such company exists and in a manner to effectuate such purpose. But just as unquestionably it becomes the owner of such land or other property, and as such owner entitled to its possession and to the sole and exclusive pecuniary benefit and profit which may be produced by its lawful use. Such obligation as to the purpose and manner of the use the Legislature may enforce, but beyond that it cannot lawfully go. It can no more require that such land or other property shall be made subject to use for any other purpose, or in any other

manner, either by or for the benefit of the public, or otherwise, than it can lawfully require that the money contributed by the stock-holders of a railroad company to its capital, shall be used for the benefit of the public with reference to a matter wholly foreign to the purpose for which the company exists, and to its interests ; as for example, to the payment of the cost of constructing a State capitol. For, I submit, that money paid into the treasury of a railroad company by its stockholders, as capital, is neither more nor less the private property of the corporation, nor as such more nor less under constitutional protection than is land or other property purchased and paid for with such money. These distinctions are clear. Yet the failure to recognize them is just now leading to very extraordinary and dangerous theories as to the power of legislatures over railroad companies and their property.

Radical assertions as to the authority of the Legislature over railroad companies and their property, are frequently based upon the fact that such companies are clothed with power to acquire property by the exercise of the right of eminent domain. But such assertions are clearly without force. Property acquired by exercise of the right of eminent domain, is as much acquired by purchase as is property acquired by negotiation and agreement with and voluntary conveyance from the owner. And land acquired for right of way by the one method, is no more and no less acquired and held in trust for public use than land acquired for right of way by the other method.

"It is immaterial in what way property was lawfully acquired, whether by labor in the ordinary avocations of life, by gift or devise, or by making profitable use of a franchise granted by the State ; it is enough that it has become private property, and it is then protected by the law of the land." (Cooley, J. in *Detroit v. Detroit & Howell Plank Road Company* 43 Mich. 148.) But this discussion of the nature and extent of a railroad company's title to land which it acquires for use in the exercise of its franchise, and of the nature and extent of the power of the

Legislature with reference to such land, is somewhat out-
side the necessities of this argument. Because the statute
under challenge is in no manner an attempt to exercise
power over such land; its requirements are with reference
to the use of money of the corporations affected.

III. It being conceded or established that the property
of railroad companies is private property, and as such under
the same constitutional protection as the property of natural
persons, it seems clear that the statute under consideration
cannot be sustained. That it is invalid is beyond question,
unless it can be justified as a legitimate exercise of the right
·of eminent domain, or of the taxing power, or of the police
power of the State.

That it is not an exercise of the right of eminent domain
will be conceded.

That it is an exercise of the taxing power I cannot be-
lieve will be suggested. Because, if in other respects it
could be held unobjectionable as a tax law, it lacks wholly
one element "which is of the very essence of taxation,"
to-wit: the element of equality and uniformity. The bur-
den which it seeks to impose upon the several railroad com-
panies in the State is not distributed upon any system of
apportionment. The burden imposed upon any one of
said companies bears no relation whatever to the burden
imposed upon either or all of the others. The extent of
the burden which each is to bear, is made to depend wholly
upon the number and location of the highways which may
be established across its right of way.

That the statute cannot be justified as an exercise of the
police power seems equally clear. The basis of that power
is found in the maxim Sic utere tuo ut alienum non
lædas. Cooley's Const. Lim. p. 533. But as I have
already shown, the duty sought to be imposed by the statute
has no connection with the manner in which railroad com-
panies affected by it have used or are using their property.
The case from 24 N. Y., already criticised in another con-
nection, may be brought forward as adverse to this position,
as it was there held that a statute which required a railroad

to make at its own expense, the necessary excavations or embankments to carry a highway established after the construction of its road over its track, was valid. The reasoning upon which such decision is based is in the following language, to wit: " *The disturbance of the surface of the ground which has rendered such work necessary was effected by the railroad itself*, and, the reservation of legislative authority" (to amend the law under which the company in question was organized) " we may suppose to have been inserted for the purpose of obliging the companies to conform with such directions as subsequent legislatures should discover to be necessary for the public good, or which should be required by public policy." From the part of the quotation which I have italicised, it is evident that the statute here in question goes beyond the scope of the statute there involved, and hence, that the case is not here in point. Moreover, I submit that the language of the opinion as quoted with reference to the purpose of the " reservation of legislative authority " if construed literally, gives a much broader scope and effect to such reservation of authority than sound reason or constitutional principles will permit to be given to it. The authority reserved may undoubtedly be used, in the discretion of subsequent legislatures, to modify, limit, restrict and even to take wholly away rights, privileges and franchises conferred, or to impose new duties and liabilities having relation to the exercise of such rights, privileges and franchises. But to give a broader effect to each reservation of authority, is to place not only the rights, privileges and franchises, but the property of every corporation subject to such reservation—and in this State all corporations organized since 1850 are so subject— wholly beyond the pale of constitutional protection. *Detroit v. Detroit & Howell P. R. Co.* 43 Mich. 148.

IV. It may be contended that as the Legislature can repeal the law under which railroad companies organized since 1850 exist, and thus wipe them out of existence, it can make their right to continue in existence dependent upon the performance of any act or condition which it may

see fit to require to be performed.[1]   And it must be conceded that there is much plausibility in this argument, which likens the Legislature to a foot-pad, who demands his victim's money or his life.   But in this case it is unnecessary to enter upon the question of its soundness or unsoundness.[2] Because, happily there is this difference between an actual flesh and blood foot-pad and the suggested legislative foot-pad, to wit: That the former, upon refusal to accede to his demands, can not only " put an end to the continued existence " of his victim, but can also despoil the corpse ; whilst the supposed legislative foot-pad can take the life only and cannot touch one farthing's value of its victim's property, money or estate.   But by the statute under consideration, the demand is not made as a " condition of continued existence," but under penalty of a forcible seizure and confiscation of the property of the victim, to the extent of ten dollars for each day that it shall refuse or neglect to comply with the demand.   And it is such forcible attempted seizure and confiscation that the defendant is resisting in defending this action.

GRAVES, C. J.   This action was commenced before a justice of the peace to recover the penalty of $10 alleged to have been forfeited by the Railway Company under section twenty-seven of the Act approved June 8, 1881, entitled " An act to revise and consolidate the laws relating to the establishment, opening, improvement and maintenance of highways and private roads, and the building, repairing, and preservation of bridges within this State."   The section reads as follows :

"Where any highway may *have been* or *shall be* established across any railroad, the *company operating such railroad* shall *open, construct and maintain* such highway and the necessary crossing therefor *across their right of way and track.*   The commissioner may serve a written notice

---

[1]It should be noted that this applies not alone to railroad companies, but to all corporations organized in this State since 1850.

[2]High authority has pronounced it unsound.   Field, J., in *County of San Mateo v. Southern Pacific R. R. Co.* 8 Am. and Eng. R. R. Cases 1.

on any person in charge of the ticket or freight office nearest to such crossing, requiring such *opening and construction* within thirty days from and after the service of such notice, and in default of such opening and construction as required by such notice, the *company in fault shall be liable* to a penalty of ten dollars per day for every day thereafter during which such highway shall remain UNOPENED, and during which the *same* and the *necessary crossing therefor* shall *remain unconstructed.*" Pub. Acts 1881, pp. 288–295.

The Railway Company pleaded the general issue, and the case was submitted to the justice on the following agreed statement of facts:

1st. That nine years ago defendant constructed its line of railway from Jonesville, Hillsdale county, Michigan, to Lansing, Ingham county, Michigan, crossing the township line which divides the townships of Lansing and Delhi, Ingham county, twenty rods east of the county line which divides the counties of Ingham and Eaton.

2d. That in the fall of 1882 a highway was duly laid out and established on said township line, commencing at said county line and running thence east on said township line one mile.

3d. That the township authorities caused the *timber* on the line of such highway from said county line east to the railroad *right of way* to be chopped and fallen (preparatory to *opening* such highway) immediately after such highway was so laid out.

4th. That thereupon the commissioner of highways of one of said townships served upon the defendant, in accordance with section twenty-seven of Act 243 of the Laws of 1881, a notice stating to defendant the establishment of such highway, and requiring it, said defendant, to *open, construct and maintain such highway across its right of way and track.*

5th. That said highway has never been actually opened to the public or for travel on either side of said railway.

6th. That defendant failed and neglected to comply with such notice, or to open, construct or maintain such highway, and that more than thirty days, to-wit, thirty-one days, have elapsed since such service of said notice.

7th. That defendant's right of way at said point is one hundred feet wide, fenced and *occupied* by defendant, and it would cost to so open and *construct*, as required by said notice, at least one hundred dollars.

8th. For the purpose of this suit no question is made about the regularity of the laying out or establishment of such highway, or as to the contents or service of such notice, each and all being admitted to be in accordance with said section of said session laws."

The justice decided that these facts established the forfeiture sued for, and he gave judgment accordingly. The Railway Company removed the case by statutory certiorari, and the circuit court determined that the facts were not sufficient and reversed the judgment. The public authorities now ask an examination of the case here on writ of error, and contend that the facts well warranted the judgment given by the justice, and that it ought to be restored.

There is no controversy about general principles. The company does not deny that it holds its property, as do all other proprietors, subject to the sovereign power of police and the general authority of government. It sets up no claim to favor, nor any immunity from the acknowledged maxims of justice. It solicits no discrimination. What it contends for is that no exception shall be made against it in the application of these principles.

The sacredness of property does not depend on whether the proprietor is a natural person or an artificial person. Nor does it depend on whether the property itself consists of lands, or shops, or warehouses, or railroads, or cars, or corporate stock. Whether property interests are in farms, or in buildings, or in cheese factory associations, or in other corporate industries, or in some other lawful form, the fundamental rights of ownership are exactly the same. It is one of the first and one of the main objects of government to protect the rights of property wherever they reside, and in case this duty is consciously and deliberately violated in any direction, it is not a mere political non-feasance,—it is a downright assault upon the right vested in every holder of property, and a breach of that trust which the institution of government implies. Whether the proprietor is wise or foolish, rich or poor, weak or powerful, a natural person or a corporation, the rule equally applies.

But in order to administer the requisite protection, and

effectuate, as far as may be, the public safety, utility, and convenience, a great variety of interferences become necessary. And so long as they fairly conform to the principles on which they respectively depend, they cannot be questioned. But if in any instance the reason of interference, which the fact conclusively implies, has no connection with the only reason on which it would be possible to justify that interference, the claim of right by virtue of the police power becomes a mere pretext, and the particular interference is a perversion of authority and an invasion of the right of property.

Admitting this to be an accurate view, how does it bear on this controversy? We are not dealing with a case where the question is as to what a company may be bound to do to fit up crossings and construct approaches and adjustments on a highway either older or newer than the railway. A leading reason for requiring these things of the company is because it has practically rendered them necessary by the way in which it uses its land, and it seems entirely just to demand that as far as the same can be reasonably accomplished it shall reduce the inconvenience, occasioned to the public by its own peculiar mode of enjoyment, to a minimum. But when the reason ceases, the right of interference must cease. The obligation cannot be carried beyond its principle. As we observe, the case under review is not one concerning the construction of approaches or a crossing. But the fact is obvious that it must stand, if at all, on the reason just mentioned. Unless what is required can be justified on the ground that the mode of enjoyment of its land by the company renders it necessary, it cannot be justified at all. Considering what it is that the company is asked to do, no other basis is possible. Can the requirement be supported on that theory?

The township insists that the company shall remove the forest from its land within the limits of the highway, and fully construct the highway in all its parts over the entire hundred feet, and make it fit and ready for travel. Now, there is no such connection between what is here exacted

and the mode in which the company occupies its land, as to let in the reason. The new highway proposed over the hundred feet is not a thing which is wanted in order to fit the railroad to its environments and establish a state of compatibility. It is to be a creation by itself, an independent work; not a contrivance which the existence of the railroad renders necessary, and which otherwise would be needless; not an appendage, not a feature of the railroad nor a thing incident to it. On being made, neither its continuance nor its excellence would be dispensed with if the railroad were removed. It would remain as an independent public work, to be kept up at the public cost. The sole ground, therefore, on which any power can be based for compelling the company to do the particular thing now demanded is inadequate and inapplicable. I agree, therefore, with the circuit judge. The statute cannot be applied in the large sense attempted. This conclusion might be enforced by reasoning in other channels, but I do not deem it needful.

Much reliance has been placed on *Albany Northern R. R. Co. v. Brownell* 24 N. Y. 345. It is enough to say now of that case that it does not apply.

I think the judgment of the circuit court should be affirmed with costs.

COOLEY and CAMPBELL, JJ. concurred

SHERWOOD, J. I am unable to concur in the result in this case as stated by my brother.