STATE, EX REL. LANCASTER COUNTY, V. C., B. & Q. R. Co.

[FILED APRIL 29, 1890.]

1. **Railroads:** HIGHWAY CROSSINGS: CONSTITUTIONAL LAW. The act of March 31, 1887, requiring railroad corporations to construct and keep in repair suitable crossings where railroads cross public highways, is constitutional.

2. ——: ——: COMPANY MUST MAINTAIN. Under that act it is the duty of a railroad company to make and keep in repair suitable crossings with approaches, notwithstanding the highway was laid out after the railroad was built. The public authorities are required to build that part of the highway within the right of way which they would have been required to make had the railroad not been constructed.

3. ——: ——: THE BOARD OF TRANSPORTATION has jurisdiction to hear complaints and make orders in regard to the construction and repairing of such crossings. Its orders in that regard may be enforced by *mandamus*.

ORIGINAL application for *mandamus*.

*R. D. Stearns, Wm. Leese, Attorney General,* and *O. P. Mason,* for relator:

An act requiring railroads to maintain suitable crossings falls within the general police power of the state. (*Thorpe v. Rutland R. Co.,* 27 Vt., 140; *Boston & M. R. Co. v.*

*Com'rs*, 79 Me., 386; *People v. R. Co.*, 70 N. Y., 569.)
In general, such maintenance is the duty of a railroad com-
pany whenever its line intersects a public highway, whether
the latter be opened before or after the road is in operation.
(*People v. R. Co.*, 67 Ill., 118; *Farley v. R. Co.*, 42 Ia.,
234; *Paducah & E. R. Co. v. Commonwealth*, 80 Ky., 147
[10 Am. & Eng. R. R. Cases, 318]; *Ferguson v. Virginia
& T. R. Co.*, 13 Nev., 184; *Pittsburg, etc., R. Co. v.
Dunn*, 56 Pa. St., 280; *Buchner v. Chicago, etc., R. Co.*,
60 Wis., 264 [14 Am. & Eng. R. R. Cases, 447]; 10 At-
lantic Rep., 113 [main case]; *Louisville, etc., R. Co. v.
Smith*, 91 Ind., 119; *Pittsburgh & C. R. Co. v. Common-
wealth*, 101 Pa. St., 192.)    This duty includes the main-
tenance of approaches (10 Am. & Eng. R. R. Cases, 332,
note; *Maltby v. Chicago & Western* [Mich.], 108; 13 Am.
& Eng. R. R. Cases, 606); and may be enforced by *man-
damus* (*People v. R. Co., supra; Attorney General v.
Great Northern R. Co.*, 4 Deg. & S. [Eng.], 75; *Paducah
& E. R. Co. v. Commonwealth, supra*).

*T. M. Marquett, contra:*

Under authorities holding the most extreme doctrine, the
company can only be required to place its road-bed in read-
iness for the crossing; it cannot be compelled to build and
maintain such crossing. (*People v. R. Co.*, 13 Am. & Eng.
R. R. Cases, 611; 52 Mich., 279; *Shields v. Ohio*, 95 U.
S., 324; *Chicago, etc., R. Co. v. Lake*, 71 Ill., 338; and the
cases cited by the relator.)    The company can no more be
charged with the expense of a crossing than a private
owner could be. (*Little Miami R. Co. v. Dayton*, 23 O. St.,
516; *R. Co. v. R. Co.*, 13 How. [U. S.], 13; *Old Colony, etc.,
R. Co. v. Plymouth Co.*, 14 Gray [Mass.], 160; *Boston &
M. R. Co. v. Middlesex*, 1 Allen [Mass.], 328; *C., etc., R. Co.
v. Lake*, 71 Ill., 338; Mills, Eminent Domain, 45; *Glover
v. Powell*, 10 N. J. Eq., 211; *Northern R. Co. v. Concord
R. Co.*, 27 N. H., 183.)    The statute is unconstitutional (1)

in taking railroad property without due compensation; (2) in imposing on the company a special assessment where there are no corresponding benefits. (*Ill. Cent. R. Co. v. Bloomington,* 76 Ill., 447; *O., (tc., R. Co. v. Lackey,* 78 Id., 55; *Pumpelly v. Green Bay Co.,* 13 Wall. [U. S.], 177; *Hanscom v. Omaha,* 11 Neb., 37.) It violates the fourteenth amendment to the federal constitution, in taking the burden from the public and placing it on the company. (*Santa Clara County v. R. Co.,* 118 U. S., 394.) *Mandamus* is not the proper remedy because (1) had the legislature so intended it would have specified it in the act (*Albertson v. State,* 9 Neb., 429; *R. Co. v. Com'rs,* 31 O. St., 398); (2) the writ will not be allowed where there is a remedy in the ordinary course of law. (High, Ext. Rem. [2d Ed.], sec. 5; *State v. R. Co.,* 36 O. St., 441).

NORVAL, J.

This is an original application for *mandamus* to compel the respondent to construct a crossing where its road crosses public highway No. 1119 of Lancaster county. The petition contains two counts. The first alleges "that the relator, the plaintiff, is the county of Lancaster, duly organized under the laws of the state of Nebraska.

"The defendant, the Chicago, Burlington & Quincy Railroad Company, commonly known as the Burlington & Missouri Railroad Company in Nebraska, is a corporation duly organized under and by virtue of the laws of the state of Nebraska, and is authorized to do business and is doing business in this state as a railroad company and a common carrier. That said railroad company is the present owner and operator of the Chicago, Burlington & Quincy railroad, and that said road crosses a public highway in the county of Lancaster, and state of Nebraska, known as road No. 1119, said public highway being laid out as a short connection between two duly laid out and traveled public highways and as being on a section line, and that the

Chicago, Burlington & Quincy railroad track crosses said public highway along said section line between the northeast quarter of section No. 34 and the southeast quarter of section No. 27, town 10, range 6, in Lancaster county, Nebraska, and is in road district No. 2, Garfield precinct, in said county, and that said crossing is near the center of said quarter sections 34 and 27 aforesaid.

"That on or about the 17th day of September, 1888, the Chicago, Burlington & Quincy Railroad Company was duly notified, as the owner and operator of the Chicago, Burlington & Quincy road, as aforesaid, by one A. M. Trimble, then and now the supervisor of said road district No. 2 aforesaid, to construct, make, and put in said crossing within its right of way, and over and across its said right of way, said highway No. 1119 being in said road district No. 2 as aforesaid, and being under the supervision and charge aforesaid of said supervisor. A copy of said notice is hereto attached and marked Exhibit 'A' and made a part hereof."

The plaintiff further alleges "that said Chicago, Burlington & Quincy Railroad Company has not made a crossing of any kind at the point hereinbefore described, where the said Chicago, Burlington and Quincy railroad crosses said public road or highway No. 1119; that no grading, ditching, bridging, or other work of any kind has been done within the right of way of said railroad company as required by law; that said road No. 1119 is wholly useless to the public as a highway for the purposes of travel because of the refusal and neglect of said Chicago, Burlington & Quincy Railroad Company to comply with the requirements of the law and said notice served upon it as aforesaid by said road overseer, A. M. Trimble.

"That road No. 1119 is a connection between the 'A' street highway, which has been a public highway since October 4, 1887, and road No. 433, which was duly laid out as a public highway in the month of July, A. D. 1871,

and has been traveled and used as a highway ever since; that road No. 1119, connecting the above described highways as aforesaid, is only one-half mile long, and is upon the section line between sections 34 and 27, and is much needed by a large commercial and busy community who have no good road facilities for getting in and out of Lincoln without great inconvenience, delay, and expense.

"A large and costly bridge has been constructed by the county commissioners of Lancaster county across Salt creek, and other bridges across branches of said stream have also been constructed near the point and on the highway leading to the crossing of the said defendant's railroad, which said bridges are wholly useless and the work done wholly useless, unless said railroad crossing be put in as requested."

The second count of the petition alleges that the relator on November 15, 1889, filed a complaint before the state board of transportation of the state of Nebraska against the respondent, containing the same allegations as the first count of the petition above set forth; that the defendant filed its answer to said complaint with the board of transportation; a trial was had before said board upon the issues joined, and findings were made against the company and it was ordered to put in the crossing where said highway crosses its road within sixty days after the service of the order upon the respondent, and that the order of the board of transportation was served on July 26, 1889, upon G. W. Holdrege, the general manager of the company.

The respondent demurs to the petition in this cause, and assigns the following grounds of demurrer:

1. That this court has no jurisdiction of the subject-matter of the action.

2. That said board of transportation had no jurisdiction to make the findings, and this court has no jurisdiction to enforce the findings of that body in a suit of this kind.

3. That the petition does not state facts sufficient to con-

stitute a cause of action in favor of the relator and against this respondent.

The respondent claims that as the highway was laid out after the construction of the railroad, it is not the duty of the company to put in the crossing; in other words, a railroad company is only required to construct highway crossings at places where public roads were established prior to the building of the railroad.

Section 1 of an act entitled "An act to compel railroad corporations and others to make and keep in repair crossings," which took effect March 31, 1887, provides that "Any railroad corporation, canal company, mill owner, or any person or persons who now own, or may hereafter own, or operate any railroad, canal, or ditch that crosses any public or private road shall make and keep in good repair good and sufficient crossings on all such roads, including all the grading, bridges, ditches, and culverts that may be necessary within their right of way." Section 2 provides that when the corporation has failed to comply with section 1 the road supervisor shall give thirty days' notice in writing where the crossing is required. Section 3 provides that if the corporation shall neglect for sixty days from the giving of the notice to make the crossing, suit may be brought to compel it to do so.

It cannot be doubted that said section 1 makes it the duty of railroad companies to make and keep in repair all crossings at public highways. The respondent insists that the act is unconstitutional, as it imposes a burden on the corporation that did not exist when it was incorporated. Under the general police power of the state, the legislature has authority to place new and additional burdens upon corporations, when such burdens are for the safety of the people and for the public good, although the power to do so may not be reserved in the charter. This right has been so frequently recognized by the courts that it can no longer well be questioned. The only difficulty is de-

27

termining whether the new burden or restriction is really
for the public safety. Of course, under the guise of the
police power, property of corporations or individuals can-
not be confiscated. If the requirements of section 1 of
the act quoted were designed for the protection of lives and
property, then it was within the scope of proper legislation.
It is of vital importance to those traveling by rail or
upon a public road that the crossings should be properly
constructed and kept in good order. These crossings re-
quire attention the same as other portions of the track, and
are liable to constantly get out of repair. The section men
in the employ of the railroad are daily passing over the
track and would soon discover a defect in the crossing and
remedy it. Not so with the road supervisor; he seldom
sees the crossing. The company by laying its ties and
rails and making its grade renders a crossing necessary,
and it is not unreasonable to place the burden on the one
making it necessary. The interests of the public, as well
as that of the railroad company, require that the latter
should have exclusive control of the crossings. If inex-
perienced road supervisors were required to construct and
keep in repair these crossings great loss of life and prop-
erty would likely result from the negligent construction of
or the failure to keep in good order the crossings. The
purpose of the legislature in placing this burden upon the
railroad corporation was to secure the safety of the public
travel and transportation.

It has been frequently decided by the courts that under
the police power the legislature may compel existing rail-
road corporations to fence their tracks and put in cattle
guards. ( *Wilder v. Maine Central R. R. Co.*, 65 Me., 332;
*Thorpe v. Rutland R. R. Co.*, 27 Vt., 140.) By a parity
of reason the law-making power may make it the duty of
railroad companies to construct and keep in repair high-
way crossings, notwithstanding the railroad was built be-
fore the enactment of the law. Such a burden is not in

violation of the constitutional provision requiring that taxes shall be equal.    Similar laws have been held constitutional. (*Boston & M. R. R. Co. v. County Commissioners*, 79 Me., 386 ; *People v. Boston & A. R. R. Co.*, 70 N. Y., 569.) The supreme court of Illinois, in *I. C. R. R. Co. v. Bloomington*, 76 Ill., 451, declare a similar law unconstitutional.

We do not mean to be understood as deciding that it is the duty of a railroad corporation to construct and keep in repair all highways laid on or across its right of way. What we hold is that it must construct suitable crossings in that part of the highway within the right of way made necessary by the building of the railroad, and keep the same in repair.    If the railroad track is laid above the natural surface of the ground where the highway crosses it, the crossing would include suitable approaches.    If the track is below the natural surface of the ground, the crossing would include whatever is necessary to make a reasonably safe way for persons traveling the highway to cross the railroad.

It cannot be said that the public good requires that the burden should be upon the railroad company to construct the remainder of the public highway within the right of way.    No serious consequences would likely result from requiring the public authorities to construct the highway after the crossings and approaches are put in.    We think that it is the duty of the public authorities to construct and keep in repair all the highway within the right of way which they would have been required to build had the railroad not been constructed. (*People v. L. S. & M. S. Ry. Co.*, 52 Mich., 277.)

The relator also urges that it is entitled to compensation for the laying of a highway across its right of way.    Sec. 16 of chap. 78 of Compiled Statutes requires that claims for damages, by reason of the location of highways, be filed with the county clerk within a specified time.    This section applies to all claims for damages.    If the respond-

ent failed to present its claim it is waived. Its right to compensation cannot be litigated in this case.

It is urged that the plaintiff has mistaken its remedy; that under sec. 3 of the said act of March 31, 1887, the relator had an adequate remedy at law. We think that the remedy provided by that section is merely cumulative, and does not affect the right to enforce the obligation by *mandamus*. (*State v. Stearns*, 11 Neb., 104; *People v. C. & A. R. R. Co.*, 67 Ill., 118; *People v. D. & C. R. R. Co.*, 58 N. Y., 152; *People v. N. Y. C. & H. R. R. Co.*, 74 Id., 302.)

The board of transportation has jurisdiction to hear complaints and make orders in regard to the construction and repair of crossings where railroads intersect public highways. The authority is clearly conferred by sec. 2 of the act creating that board. The action of that tribunal must be obtained in order that this court may take cognizance of the case. (*State v. C., St. P., M. & O. R.*, 19 Neb., 476.

We are of the opinion that the petition is sufficient. The demurrer is therefore overruled.

JUDGMENT ACCORDINGLY.

THE other judges concur.