# TOWN OF O'FALLON
## v.
# THE OHIO & MISSISSIPPI RAILWAY COMPANY.

*Statutes—Construction of—Constitutional Law—Duty of Railroad Corporation to Construct and Maintain " Crossings and the Approaches Thereto"—What " Approaches" Include—Notice—Statutory Requirements to be Complied with—Proper Party Plaintiff in Action under Statute.*

1.   The phrases, "railroad crossings of highways and streets" and "the approaches thereto within their respective rights of way" in Par. 71, Sec. 8, Chap. 114, R. S. 1889, describe different portions of the space within the right of way of the railroad company.  Railroad "crossing" means that portion comprising the track or road-bed; the "approaches thereto," that portion extending from the track, on each side thereof, back "so far as may be necessary, so that at all times the crossing shall be safe." The words do not necessarily include the entire width of the railroad's right of way.

2.   In the case at bar, this court holds that the approaches did not include two bridges, one on each side, over ditches dug by the railway company, located respectively nineteen and twenty-seven feet from the center of the track, the ground between the bridges being on a level with the track.

3.   No facts are shown in the record which imposed a common law liability on the defendant to maintain the bridges in question.

4.   Where a statute points out and directs the way in which an act is to be performed, as the serving of a notice, it should be complied with, especially where the act is to be the basis of a suit to be brought.

5.   The notice served in this case was insufficient in that, first, it did not direct the manner in which the repairs should be done; second, it did not properly locate the crossing in question; third, it was not served on the nearest agent; fourth, it should have been directed to the company and not to the superintendent.

6.   While the question is not free from doubt, the court holds that the suit was properly brought by the road commissioners in the name of the town.

[Opinion filed September 9, 1892.]

Appeal from the Circuit Court of St. Clair County; the Hon. Benjamin R. Burroughs, Judge, presiding.

The appellant, by its highway commissioners, brought suit against the appellee to recover the sum of $129.87 on the following state of facts:   The appellee's road was constructed in the year 1854 through the town of O'Fallon.   It crossed over a public highway, at the time, by a trestle that spanned a portion of the bottom lands of Silver creek.   The bed of the highway had to be raised afterward but not on account of · the construction of the railroad.   There not being sufficient room left to go under the trestle, the highway was changed to its present location about the year 1862, so that the present crossing is about 300 yards east of Silver creek.   The railroad

company had constructed ditches seventeen and twenty-nine feet respectively, on each side of the center of its track before the change, which were about three feet deep, that formed natural drainage for the railroad, and one of the ditches for the highway at the present crossing, both of which ditches were within the right of way, which at that place was 100 feet wide, or fifty feet on each side of the center of the track. After the change was made in the location of the crossing of said highway, the bridges over said ditches were built and maintained, up until this suit by the public authorities. There is no evidence to show what, if any, agreement was made between the railroad company and authorities in regard to the change in the highway or in regard to constructing and maintaining the bridges. At the time the notice hereafter mentioned was given, that portion of the highway between the bridges was level with the track, and so far as appears in proper condition, and the crossing of the track and for two or three feet on each side was planked and graded so as to form a safe, easy and convenient way of crossing the track. The bridges over said ditches being out of repair, as agreed by the parties hereto, the following notice was served by the highway commissioners on the appellee:

O'FALLON, ILLS., June 4, 1889.
(It is agreed the date should be 1890.)
To Supt. of O. & M. R. W. Co.

You are hereby notified that the highway crossing at or near the Lebanon distillery, in O'Fallon township, needs repairing, and unless repaired within ten days we shall proceed as in the statute in such case made and provided.

HENRY HAURY,
RANDOLPH OCHS,
DOMINICK ZITZMAN,
Highway Commissioners.

Which notice was served on the appellee's agent at the station of O'Fallon, in the town of O'Fallon, on the 11th day of June, 1890, which was the only station of appellee in said town, and the nearest station to Zitzman, the com-

missioner of highways who served the notice, but was not the nearest station on said road to said crossing, the station of O'Fallon being three and one-half miles west of the crossing in question, and the station of Lebanon on said road being only two miles east of said crossing. The appellee not having complied with said notice, the commissioners of highways in November, 1890, thereafter, proceeded to construct or repair said bridges, at an expense of $129.87, an itemized bill of expense being introduced in evidence, to which no objection was made.

Messrs. Dill & Schaefer, for appellant.

Messrs. Pollard & Werner, for appellee.

Mr. Justice Sample. On the foregoing state of facts, on trial before the court, judgment was rendered in favor of the railroad company, to which appellant excepted and brings the case to this court by appeal, and assigns for error that the judgment is against the law and the evidence. The appellant relies upon paragraph 71 or Sec. 8, Chap. 114, R. S. 1889, and those immediately following on the same subject, and also apparently upon the common law liability of appellee, as announced by the Supreme Court in the case of The People, etc. v. C. & A. R. R. Co., 67 Ill. 118. The paragraph referred to is : " Hereafter, at all of the railroad crossings of highways and streets in this State, the several railroad corporations in this State shall construct and maintain said crossings, and the approaches thereto, within their respective rights of way, so that at all times they shall be safe as to persons and property."

The appellee contends that the foregoing paragraph of the statute does not apply to the facts in this case, for the reason, as claimed, that the railroad crossing was in a good state of repair, as well as the approaches thereto, and the bridges were not a part of the approaches. Therefore it claims that no duty was imposed on it by the statute to construct or repair them.

It further contends that under the facts in this case there

was no common law liability. Its position further is, that if the statute is so construed as to impose a duty on it to construct and maintain the bridges in question, made for the sole benefit of the highway, then it would be unconstitutional as imposing inequality of burdens, and cites the case of The People v. L. S. & M. S. R. R. Co., 52 Mich. 277.

It concedes the constitutionality of the law, if confined to the railroad crossings and the approaches thereto, so far as may be necessary and proper for safe passage over the crossings, without extending by construction such approaches so as to take in the entire width of the right of way.

We are of the opinion that even as to highways laid over railroads after the construction of the railroad, the statute is constitutional. State of Nebraska v. C., B. & Q. R. R. Co., 45 N. W. Rep. 469, which recites with approval 52 Mich., *supra*, and People v. Railroad Company, 70 N. Y. 569; see also Boston & M. R. Co. v. County Com'rs, 79 Mich. 386; I. C. R. R. Co. v. Willenborg, 117 Ill. 203. While the last case was decided with reference to "farm crossings," yet the principle upon which it was based is equally applicable to "railroad crossings and approaches thereto." The first point presented in this case involves the question of the proper construction of the section of the statute above quoted and that will now be considered without reference, at this time, to any other element in the case.

There are no decisions in this State, so far as we have been able to discover, wherein the point now made has been determined. It has been held that where a railroad is constructed over a highway already established, that the company must restore the highway, as near as may be, to its former condition. People, etc., v. C. & A. R. R. Co., 67 Ill. 118. That decision was not made with reference to any statute but was based upon the principle of a common law duty, and therefore affords no light as to the construction of the railroad crossing statute. It is quite evident that the words "railroad crossings of highways," as used in the

above section, do not mean that the crossing includes the entire width of the right of way, as implied by the notice given in this case. If that had been the intention of the legislature, there would have been no propriety or force in the subsequent words, "and the approaches thereto within the right of way." The two phrases were intended to describe different portions of the space within the right of way of the railroad company. The words "railroad crossings," that portion composing the track or road-bed, and the "approaches thereto," that portion extending from the track or road-bed, on each side thereof, back so far as might be necessary, "so that at all times they"—the railroad crossings—"shall be safe as to persons and property." In order to secure this requirement there must be approaches; but those required to be constructed are "approaches *thereto*," that is, to "the railroad crossings of the highways."

It is supposed that the word "approach," as used in this statute, is to be given its ordinary meaning. It is common knowledge what an approach is to a bridge on a highway. It is simply that prepared or made condition on each side of the bridge that makes, in the language of the admission in this case, a safe, easy and convenient way of getting across the bridge. A contractor who had such approaches to make would not be expected to extend them so far back as to include other obstacles to safe and convenient passage of the highway, not included within the space required to construct proper approaches for the bridges.

The appellant's position evidently is, although not so stated, that the words "within their respective rights of way," following the words "approaches thereto," are words extending and amplifying the ordinary meaning of the words "approaches thereto," so as to include the entire width of the right of way, from the track or road-bed to the line of such right of way on each side thereof. It is a fundamental rule of construction that the popular or received import of words, furnishes the general rule for the interpretation of statutes, and that they should be interpreted according to the most natural and obvious import

of their language, without resorting to subtle or forced construction for the purpose either of limiting or extending their operation. To extend the meaning of the words "approaches thereto" to include the removal of all obstructions of all kinds to travel, from the lines of the right of way to the track or road-bed, would be tantamount to making the statute read that "the several railroad corporations in this State shall construct and maintain the highways within their respective rights of way, so that at all times they shall be safe as to persons and property." The legislatures of Michigan and Maine, as will be observed by reference to the decisions from these States above cited, enacted such laws and in about the language above quoted, which are plain and unequivocal in their meaning. Had our legislature intended to reach the same result, very different language would have been used than that embodied in paragraph 71 or section 8.

To give these words that enlarged meaning, would impose the duty on railroad companies at highway crossings through timber lands, of cutting down trees and removing the stumps on all the traveled part of the highway within its right of way, which the Supreme Court of Michigan, in 52 Mich., *supra*, held to be the imposition of an unlawful burden. Without now pretending to decide as to the power of the legislature to impose such a duty on railroad companies, for the question has been decided differently in different States, this we hold, that by the statute under which this action was brought, no such power was attempted to be exercised and no such duty was imposed. The words "approaches *thereto* within their respective rights of way" are words of limitation rather than of extension; they mean that in no event, as a statutory duty, as to highways laid out over railroads already established, were *such approaches* to the *railroad* crossing to be extended beyond the limits of the right of way, although to make such highways passable it might be necessary that such approaches should be extended beyond such limits. In cases as to railroads already established, the highway commissioners would have to ex-

tend such approaches as far beyond such lines of right of way as might be necessary. If those are words of limitation in the sense above expressed, then it would seem to logically follow, if our construction is correct as to what an "approach" is, within the meaning of the statute, that under the admitted facts in this case, the approaches in question did not extend back to and include the bridges on each side of the railroad, and there was no statutory duty, as such, imposed on the appellee to construct or maintain them. One of the bridges was nineteen feet and the other twenty-seven feet from the center of the track, and it is admitted that the ground between the bridges was on a level with the railroad crossing, which was planked and graded, so that as between said bridges there was "a safe, easy and convenient way of getting across the track."

In fact, the appellant makes no complaint as to the condition of the highway between said bridges, but its position is that an approach includes all that part of the highway between the line of the right of way and the track, and that if the ditches constructed by the company had been on the extreme outside lines of the right of way, although the approaches to the railroad crossing and the crossing itself, between such ditches, had been in a good condition of repair, yet the company would be liable to construct the bridges. For the reasons heretofore stated we do not so construe the statute. The duty imposed by it is that the railroad company shall construct and maintain crossings and so prepare the ground on each side thereof that such crossings may be safely passed over. Ditches made by the company before the establishment of the highway, or other obstructions to travel within the limits of the right of way, but beyond the limits for the proper construction of approaches to the railroad crossing, are not within the terms of the statute. The duty to construct railroad crossings of highways and the approaches thereto, as to highways laid out over railroads already constructed, is not imposed by the common law. It is strictly a duty of statutory enactment as a police regulation. It may be said to be in derogation

of the common law, as the imposition of a new duty and burden, unknown to that law. Such statutes can not be extended by construction to embrace cases not fairly within the scope of the language used. Burnsides v. Whitney, 21 N. Y. 148; Dwelly v. Dwelly, 46 Maine, 377. The next question that arises is as to whether or not there was a common law liability of the appellee to construct and maintain the bridges after the change in the highway. There is no proof as to any agreement between the parties as to the change. In the absence of such agreement and in view of the material change in quite a line of the highway, so as to run it on higher ground, it would seem that the presumption would be fair that the relocated part of the highway was laid out in the ordinary way.

If so, then only the liability would attach to the company that was imposed by the statute. This case is very different in its facts from that of The People, etc. v. C. & A. R. R. Co., 67 Ill. 118. As stated in that case, " The township authorities declined to act in regard to the extension of Front street, so as to change the place of the crossing of the railway, until the assent and co-operation of the company was secured. It was for its interest the change should be made, as the former crossing was dangerous and accidents had already occurred. *  *  *  To secure this change, the company had been willing to contribute freely toward the expense. Having thus secured such a change in the place of crossing as it desired, it can not be permitted to claim that it has also accomplished a result which could not have been in contemplation of the parties at the time, and relieved itself forever of a liability which it admitted to have existed in regard to the old crossing." It is also apparent from the course pursued by the appellant in giving notice, etc., under the statute, that it did not rely upon a common law liability. If it had, the question whether or not the notice was served according to the statute, which is argued at length, would have been immaterial. If the liability had been at common law, the only material questions would have been, were the bridges out of repair and did the company have notice of

that fact ?   Our conclusion is that the question of the company's common law liability does not arise under the facts in this case.   Having decided the material questions in this case which go to the right of action, we might here rest; but we deem it proper to say that the notice served on the company was entirely insufficient to sustain a statutory action.

The notice is that " the *highway crossing* at or near the *Lebanon Distillery* in O'Fallon Township needs repairing," and unless repaired within ten days proceedings will be had and taken under the statute.

The insufficiency of this notice on its face is, that it does not direct the *"manner"* in which the repairing shall be done, as required by Sec. 9 of the statute.   This is essential in order that the company doing the work might know that it was done as required by those having supervision of the highway.

The proof does not support the notice requiring that the " highway crossing " should be repaired.   What was evidently meant to be described was the " railroad crossing of the highway;" but treating it as such, and the conceded facts are that the railroad crossing was in good repair.

Again, the notice does not locate the railroad crossing. There is not one word in this record about the crossing in question being near any distillery or that there is any distillery in O'Fallon Township.   The service was not on the proper agent.   The section of the statute last referred to, requires the authorities in charge of such highway " to notify in writing the nearest agent of the said railroad corporation."   The proof shows that the agent served was one mile and a half farther away than another agent, from said crossing.   The statute does not name the kind of agent to be served with the notice, yet if a station agent is served, service should be had on one nearest the crossing.

Doubtless the purpose of this provision was, that it would be more convenient for such agent to examine the condition of things and report to the company.

The notice should be directed to the company and not to

the superintendent of the company. While some of these points may seem to be technical, yet where a statute points out and directs the way in which an act is to be performed, it should be complied with, especially where it is to be the basis of the suit to be brought. The further point is made by appellee, that the suit should have been brought in the name of the commissioners of highways and not in the name of the town. This question is not easy of solution in view of the language of the statute. Section 11, Par. 74, Chap. 114, Starr & C., does not provide who shall sue for the recovery of the expenses for making such repairs. It does provide that the *fine* of $100 imposed for failure to make such repairs, shall be enforced in the name of "The People of the State of Illinois." Sec. 2, Par. 46, S. & C., Chap. 139, of township organization act, referred to by appellee, provides that "the town shall sue and be sued by its name, except where *town officers* shall be authorized by law to sue in their name of office for the benefit of the town."

While it is true that commissioners of highways are a *quasi* corporation (Commissioners v. Baumgarten, 41 Ill. 254), yet they are creatures of the statute and can only act as it directs. There is only one provision of the township organization or road act, that authorizes the commissioners in general terms to bring suit in their official capacity, and that is to be found in the last proviso of Sec. 74, Chap. 121, which is "that the commissioners may sue and be sued on *all contracts* entered into by them for the construction and repairing of roads and bridges." It is clear that this provision does not authorize this suit in their official capacity, for there is no contract. If the old rule is applied, that where the right to do one special thing is included the right to do another not mentioned is excluded, then it would seem that both by said rule and by Sec. 2, Par. 46, *supra*, of the township organization act, the commissioners' right to sue in their official capacity, is limited to the class of cases named in the proviso of Sec. 74, *supra*. The right to sue in the name of the town can not be based, however, on the authority of the section referred to of the township organi-

zation act, for in the case, The Town of Kankakee v. K. & I. R. R. Co., 115 Ill. 88, it has been held that under that act the town can only bring suit in its name when authorized by the electors of the town to do so, except as otherwise provided. Sec. 3, Art. 11, Chap. 139.

The appellee's counsel claim that the statute on which this action is based is a penal statute which, if true, then Sec. 74, of Chap. 121, expressly provides that "all suits for the recovery of any fine or penalty under this act shall be brought in the name of the town in which the offense is committed, * * * and it shall be the duty of the commissioners to reasonably prosecute for all fines and penalties under this act."

While it is true that the action is based on another statute which is not, strictly speaking, a penal statute, yet the right of action was intended to be invested in some public authority, and at the instance, evidently of the commissioners; therefore it is considered that as the statute under which the action was brought may be said to partake of a penal nature, and as being really a part of the road law, the suit was properly instituted in the name of the town by the commissioners.

The judgment will be affirmed.

*Affirmed.*