THE CITY OF ALBIA, Appellant, v. THE CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY.

**Crossing and Viaduct:** RAILROADS. In view of Acts Twenty-second
1  General Assembly, chapter 32, granting to cities of the first class and certain cities of the second class the right to require railway
3  companies to erect viaducts under certain specified conditions, and limitations, the words "good, sufficient and safe crossings" in
4  Code, 1873, section 1288, providing that every railway corporation shall construct at all points where its road crosses any public highway, good, sufficient and safe crossings and cattle guards, refer to grade crossings, only, and do not cover overhead crossings or viaducts rendered necessary by the establishment of a highway after the construction of a railroad.

SAME: *Cities and towns.* An incorporated city or town may lay out
2  and establish streets over a railroad right of way to the same extent as over other private property.

SAME. In the absence of express legislation, a railroad company can-
3  not be required to construct crossings over its right of way in order to prolong or connect streets established after the location and acquisition of the right of way.

*Appeal from Monroe District Court.*—HON. M. A. ROBERTS, Judge.

MONDAY, MAY 31, 1897.

ACTION at law to compel the defendant to construct and maintain a crossing over its right of way in one of the streets of the city of Albia; and to assess the damages defendant has sustained by reason of the taking of part of its right of way for highway purposes. There was a trial to a jury, resulting in a verdict and judgment finding that defendant was entitled to damages in the sum of four hundred and twenty-one dollars, and that plaintiff should build and maintain at its own expense the viaduct needed to effectuate the crossing. The judgment further required of plaintiff that it elect within one year whether it would pay the damages and use the defendant's right of way for street purposes,—in default of which its right to take and use the property was barred. From this judgment and order plaintiff appeals.—*Affirmed.*

*W. A. Nichol* and *D. M. Anderson* for appellant.

*T. B. Perry* for appellee.

DEEMER, J.—In the year 1878 the appellee constructed what is known as its "South Track" through the city of Albia. It was built in a cut about one hundred and twenty feet wide and thirty feet deep. Appellee's right of way at the point in question is four hundred feet wide. At the time the track was laid, Clinton street, in the city of Albia, which runs north and south, terminated at what is known as "Cousin's Addition," about forty rods north of appellee's right of way. Thereafter, the land through which the railway runs was platted into town lots, streets, and alleys as Cousin's addition, and Clinton street was extended southward across the right of way and on to the southern limits of the city. In April, 1894, the city accepted the dedication of the extension of Clinton street, and requested of the railroad company that it be allowed to

use a strip of ground sixty feet wide and four hundred feet long over its right of way, in order to prolong the street and connect Cousin's addition with the original city. This, appellee refused to do, except on condition that appellant should keep up and maintain the necessary crossing and cattle guards. Appellant brought this action to have the court assess the amount it should pay for the crossing; and make such orders as should secure the strip of land needed for its use, in effectuating the crossing. The trial court instructed the jury that the appellee was not required to construct and maintain a bridge over its right of way, that the law imposed that duty upon the appellant, that appellant was obligated to remove at its own expense all the earth needed to enable it to construct a crossing, and that appellee was entitled to four hundred and twenty dollars, the value of the bridge then standing at the place of crossing, and the further sum of one dollar as damages for the invasion of the strip of ground. It is from this finding and the resulting judgment that the appeal is taken.

Appellant contends that, whenever an incorporated town or city desires to extend one or more of its streets over an existing railway track or right of way, it is incumbent on the railway company to construct the crossing, whether it be at grade, above or under the track; while appellee contends (1) that, as the land included within its right of way was already burdened with a public use, it could not be incumbered by another, except by express legislative enactment, and (2) that the only act of the legislature authorizing such new use or servitude has reference solely to grade crossings, and cannot be so extended as to require of it the construction and maintenance of a viaduct or overhead crossing of its right of way. In the case of *C., M. & St. P. R'y Co. v. Starkweather*, 97 Iowa, 159, we said "It is not true that property devoted to one public use cannot be subjected to any other. It

is within the power of the general assembly to make the same property subservient to different public uses, or even to take it from one public use and devote it to another." The doctrine is subject to the modification, however, that the power to take the property for the second public use, when such an appropriation would supersede or defeat the first one, must be given expressly or by necessary implication; and stress is placed on that modification, by most of the authorities to which we have referred. Applying this doctrine to the facts of that case, we held that an incorporated town had authority, under Code, sections 464-470, 1270, to condemn a strip across a previously acquired railroad right of way for the purpose of extending and connecting its streets, and concluded by saying: "We are of the opinion that the statutes of this state to which we have referred authorized the opening of the street as proposed. They do not in terms provide for the taking of property already devoted to public uses, but the taking sought by the defendants would not exclude the plaintiff (railroad company) from its property, nor interfere materially with its use, the operation of its trains, and the transaction of its business. The exclusive right to use the railways as such will remain in the plaintiff, and the public will have the right to cross it at proper times and by suitable means." We have it established, then, as a general rule, that an incorporated city or town may lay out and establish streets over the right of way of a railway company to the same extent as it may over other private property; and it follows that the city of Albia had the right to extend and prolong Clinton street as it did.

But the question remains, who is to pay for the viaduct needed to effectuate the crossing? It is no

doubt true, that in the absence of express legislation, a
railroad company cannot be required to construct
viaducts over its right of way, in order to prolong
or connect streets or highways established after
the location and acquisition of the right of way.   But
the legislature may, in the exercise of its police power,
exact this duty of these corporations.   In recognition
of this doctrine our legislature enacted what is known
as section 1288 of the Code of 1873, which is as follows:
"Every corporation constructing or operating a rail-
way shall make proper cattle guards where the same
enters or leaves any improved or fenced land, and con-
struct at all points where such railway crosses any
public highway, good, sufficient, and safe crossings and
cattle guards, and erect at such points at a sufficient
elevation from such higway to admit of free passage of
vehicles of every kind, a sign with large and distinct
letters placed thereon, to give notice of the proximity of
the railway, and warn persons of the necessity of look-
ing out for the cars."   Appellee's contention is that the
words "good, sufficient, and safe crossings" refer to
grade crossings, and that they should not be so extended
as to cover overhead crossing or viaducts.   It concedes
that, if the highway or street had been first established
it would have been bound, under other provisions of the
law, to erect a bridge at the place where its right of way
crossed the highway or street; but it says that, as the
right of way was first located and used, it cannot be
compelled to build bridges to accommodate the public
in the use of highways and streets thereafter estab-
lished.   The case turns, of course, upon the construction
to be given section 1288 of the Code, before quoted.   It
seems to us that this statute has reference to grade
crossings.   It says that the corporation shall construct,
at all points where the railway crosses any public high-
way, good, sufficient and safe crossings and cattle
guards, and erect at such places a sign, to give notice

of the proximity of the railway, and to warn persons of the necessity of looking out for the cars. Grade crossings are the rule in this state, and under or over crossings the exception, and we think this statute was enacted with reference to this rule; for it not only requires the construction of crossings, but also provides that each and every crossing shall be supplied with cattle guards and signs to warn persons of the necessity of looking out for the cars. Now, while a sign might be of some utility at an overhead or under crossing, a cattle guard would not be; yet the corporation is as much bound to erect the cattle guard as it is the crossing. As the one obligation is as imperative as the other, the law should be so construed as to make fulfillment of some use, either to the railway or the traveling public. This can only be done by interpreting the language used as applicable to grade crossings only. Again, the obligation to erect viaducts in such cases, if it exists at all, does not depend upon the order or direction of the municipal authorities, but upon absolute statutory requirement; and, if we give the act the construction contended for by appellant, railway companies may be compelled to erect viaducts over their tracks at every street crossing along the entire length of their right of way through a city, if such bridges are needed to connect the streets under or across which the right of way runs. Manifestly, such was not the legislative intent. A city or incorporated town has the right, as a general rule, to condemn part or parts of the right of way for street or highway purposes, and use the property so condemned for these purposes, provided such use does not destroy or materially impair the franchise or property rights of the company, and, where the crossing is at grade, the company is not entitled to damages for the expense of making the crossing, erecting the cattle guards, or providing the sign. But where the

crossing is over or under the right of way, the damages to be assessed are not controlled by statute, and vest as at common law, and contemplate, as we think, the expense of building the bridge. We may well suppose that the legislature, in passing the statute under consideration, had in mind the conflict of authority in reference to the power of the state to compel the construction of bridges over rights of way in highways which were not in existence at the time of the construction of the railway, and made the act apply simply to grade crossings. The conflict of which we speak is shown by reference to the authorities cited in the learned opinion of Magruder, C. J., in the case of *Chicago & N. W. R'y Co. v. City of Chicago,* 140 Ill. 309 (29 N. E. Rep. 1109); *Kansas Cent. R. Co. v. Jackson County Commissioners,* 45 Kan. 716 (26 Pac. Rep. 394). See, also, *Detroit v. Detroit & H. P. R. Co.,* 43 Mich. 140 (5 N. W. Rep. 275); *Railway Co. v. Hough,* 61 Mich. 507 (28 N. W. Rep. 532); *State v. Chicago, B. & Q. R. Co.,* 29 Neb. 412 (45 N. W. Rep. 469); *State v. District Court* (Minn.) 44 N. W. Rep. 7; *Massachusetts Cent. R. Co. v. Boston, C. & F. R. Co.,* 121 Mass. 124; *Old Colony & F. R. R. Co. v. Plymouth County,* 14 Gray, 155; *Railroad Co. v. Capner,* 49 N. J. Law, 555 (9 Atl. Rep. 781); *Illinois Cent. R. Co. v. City of Bloomington,* 76 Ill. 447.

We are confirmed in our conclusions by the fact that the Twenty-second General Assembly passed an act (chapter 32) granting to cities of the first class, cities acting under special charters, and cities of the second class having a population of seven thousand or over, the power to require railway companies to erect viaducts over or under their tracks, under certain conditions and limitations, among which were that the approaches to the viaduct should not exceed eight hundred feet in length, that no such viaduct should be required on more than every fourth

street running in the same direction, and that no more than one such viaduct should be required in any one year. If, as contended by counsel for appellant, railroads were compelled to erect viaducts over their rights of way before the passage of this act, in virtue of section 1288 of the Code, the legislature did a useless and unnecessary thing in passing the act known as chapter 32, Acts Twenty-second General Assembly. If, before the passage of this last-named act, railways were obliged to build viaducts over their rights of way in order to effectuate a crossing of city streets or public highways, we have this peculiar state of affairs: that in the smaller cities of the state railway companies are required to build viaducts at every street or highway crossing where such viaducts are needed to make a good and sufficient crossing, while in the larger and more populous cities such viaducts cannot be required on more than every fourth street running in the same direction, and the approaches shall not exceed eight hundred feet in length, and no more than one can be required in any one year. Such a construction should not be adopted without plain necessity therefor, and we are not disposed to so interpret the law. We look to chaper 32 of the Acts of the Twenty-second General Assembly, first, to arrive at a proper construction of section 1288 of the Code, and find that the legislature undoubtedly placed the same interpretation upon it that we have given; and, second, we look to it in connection with section 1288, and find that appellant's contention involves such unreasonable and unjust results that we ought not to adopt it. From these conclusions it follows that the trial court was right in holding that it was the duty of the city to erect the bridge at its own expense, or to pay to the railway company as damages the amount required to build the bridge. No claim is made by appellant that the judgment and order of the court does not accomplish these results, and it is AFFIRMED,